ON REHEARING

PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

DONATHAN WAYNE HADDEN,
           *Defendant-Appellant.*

No. 03-7508

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CR-98-156; CA-02-334-22-4)

Argued: October 25, 2006

Decided: February 7, 2007

Before WIDENER, WILLIAMS, and TRAXLER, Circuit Judges.

Affirmed by published opinion. Judge Williams wrote the opinion, in which Judge Widener and Judge Traxler joined.

## COUNSEL

**ARGUED:** David Bruce Betts, Columbia, South Carolina, for Appellant. Alfred William Walker Bethea, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee. **ON BRIEF:** Reginald I. Lloyd, United States Attorney, Columbia, South Carolina, for Appellee.

**OPINION**

WILLIAMS, Circuit Judge:

Donathan Wayne Hadden was convicted on drug and gun offenses and received a sentence of 228 months' imprisonment. After an unsuccessful direct appeal, he filed a petition in the district court under 28 U.S.C.A. § 2255 (West 1994 & Supp. 2006) alleging that his convictions and sentence were unlawful. The district court agreed with Hadden in part, vacated one of Hadden's convictions, and entered a new sentence of 168 months' imprisonment. In entering Hadden's new sentence, the district court did not conduct a resentencing hearing.

Hadden now appeals his 168 month sentence, arguing that he was entitled to a resentencing hearing and that the sentence was erroneous under *United States v. Booker*, 543 U.S. 220 (2005). For the reasons that follow, we affirm.

I.

The procedural posture of this case is complicated, due in large part to the fact that it was percolating up from the district court during the Supreme Court's recent interpretations of the Sixth Amendment in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Booker*. Because understanding the timing of these decisions in relation to Hadden's case is necessary to comprehend fully our resolution of this appeal, we set forth this case's procedural and factual history in some detail.

Beginning in 1997, with the cooperation of drug dealers Darlene Norris and Annie Lewis, the Government began to target Jerry and Sherrie Miller, two of Norris's and Lewis's large-scale buyers. In a series of recorded telephone calls, the Millers indicated that they knew a third party interested in purchasing two pounds of methamphetamine from Norris. Acting as the go-between, the Millers worked with Norris to arrange the transaction on January 20, 1998, at the Coastal Mall in Conway, South Carolina. On the day of the reverse sting operation, Hadden arrived at the mall with the Millers and was arrested. He had three loaded firearms in his truck, digital scales, and

$3,500.00 in cash. Ultimately, the Government determined that Sherrie Miller's sister, Sheryl Knight Gruber, had made the arrangement for Hadden to buy the two pounds of methamphetamine.

By superseding indictment, Hadden was charged with conspiracy to possess with intent to distribute and distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846, attempted possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 (collectively "the drug counts"), and with use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (the 924(c) count). Hadden pleaded not guilty and proceeded to a jury trial.

At trial, the Government called Joseph Evans as a witness. Evans testified that over the course of various transactions, he had purchased approximately three or four pounds of methamphetamine from Hadden that he then resold. Evans purchased all of his methamphetamine from Hadden, except for a one-time purchase from the Millers. On September 5, 1997, Evans was arrested while in possession of eight ounces of methamphetamine, which he testified came from Hadden. After Evans's arrest, Hadden loaned him $5,000.00 to post bond. Hadden continued to loan Evans money in connection with his legal fees, and Evans testified that he continued to purchase methamphetamine from Hadden after his arrest.

The Government also called Gruber, who testified that Evans first introduced her to Hadden in May 1997. Gruber sold methamphetamine that she purchased from Evans and the Millers. In December 1997, Jerry Miller asked Gruber if she knew anyone who wanted to buy two pounds of methamphetamine. Shortly thereafter, Gruber asked Hadden the same question. Hadden responded that he did not know anyone interested at that time, but later phoned Gruber and told her to get in touch with Miller to find out if the two pounds were still available. Gruber agreed to contact Miller and inquire whether the two pounds of methamphetamine were still available for sale. After a series of phone calls in which Gruber acted as the middle person, she put Hadden in touch with Miller for them to deal directly on the transaction.

The Government also called the Millers as witnesses. Jerry Miller testified that he initially informed Hadden that he had one pound of

methamphetamine for sale. Hadden indicated that he instead wanted two pounds. Miller first met Hadden minutes before their arrest, and it was his belief that Hadden was there to purchase two pounds of methamphetamine. Sherry Miller likewise testified that she and her husband met Hadden at the mall to sell him two pounds of methamphetamine that they were planning to get from Norris and Lewis.

The Government then called Norris and Lewis as witnesses. Norris testified about phone calls with the Millers, which were recorded on behalf of the Government. The Millers told Norris that they knew a man interested in purchasing two pounds of methamphetamine for $14,000.00 per pound. On the day of the proposed transaction, Lewis met the Millers at the mall. The Millers told her they had to go and meet their man. When they returned, they were followed by a man in a white truck, who was in fact Hadden. Just prior to the arrest, Lewis testified that Miller told her that Hadden was going to pay $32,000.00 for the drugs.

Hadden's defense theory was that he drove 300 miles from Vidalia, Georgia to Conway, South Carolina to pick up $400.00 that Jerry Miller owed Evans, and to attempt to sell Miller digital scales. Hadden attempted to buttress his defense by pointing out that he only had $3,500.00 on his person when he was arrested, far less than the $32,000.00 purchase price of the two pounds of methamphetamine.

At the conclusion of the trial, the jury returned a guilty verdict on all three counts of the superseding indictment.[1] Hadden's presentence report (PSR) held him accountable for 2,684.01 grams of methamphetamine. Under the 1998 Guidelines, Hadden was assigned a base offense level of 34 because the PSR assigned him a criminal history level of II and attributed to him "[a]t least 1.5 KG but less than 5 KG of Methamphetamine, or at least 300 G but less than 1 KG of Methamphetamine (actual)." U.S. Sentencing Guidelines Manual

---

[1]The jury did not attribute any specific drug weights to Hadden and the indictment did not allege any. Although such a scenario seems implausible today, Hadden was tried and sentenced before the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000), *Ring v. Arizona*, 536 U.S. 584, 609 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).

§ 2D1.1(c)(3) (1998). The PSR also recommended a two-level upward adjustment for obstruction of justice for a total offense level of 36. This carried with it a Guidelines range of 210 to 262 months' imprisonment. Hadden filed objections to the PSR, arguing that the drug weights attributable to him should be reduced by 680.4 grams and that the two-level adjustment for obstruction of justice was improper. He contended that he would have an adjusted offense level of 32 if his objections were sustained.

The district court conducted a lengthy sentencing hearing at which it attempted to address Hadden's objections and reach a drug weight that could be agreed upon by both parties. The district court determined that the evidence clearly demonstrated that Hadden had attempted to purchase two pounds of methamphetamine during the reverse sting. The district court, however, found merit in Hadden's primary objection to attributing an additional 680.4 grams to him, and accordingly it removed that weight from the calculation. The district court also sustained Hadden's objection to the obstruction of justice enhancement. Nonetheless, based on the two pounds from the reverse sting and the methamphetamine that Evans received from Hadden (some of which was laboratory tested and turned out to be 38.6% actual methamphetamine), Hadden's base offense level remained at 34. Based on this offense level and a criminal history level of II, Hadden's sentencing range was 168 to 210 months' imprisonment.

On June 21, 1999, the district court sentenced Hadden at the low end of the Guidelines range to 168 months' imprisonment on each of the drug counts (to run concurrently) and 60 months' imprisonment on the § 924(c) count (to run consecutively), for a total sentence of 228 months. Because Hadden's 60 month sentence on the § 924(c) count accounted for his gun possession during the commission of his drug crimes, the Government was unable to seek an enhancement of his sentence under U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (1999) (setting forth an enhancement for possession of a gun during the commission of a drug crime). *See* U.S. Sentencing Guidelines Manual § 2K2.4 application n.2; *United States v. Clements*, 86 F.3d 599, 601 (6th Cir. 1996) (noting that if defendant is sentenced under § 924(c), the two-level enhancement under § 2D1.1(b)(1) is not permitted so as to avoid double-counting). Hadden appealed his convic-

tions and sentence, and we affirmed. *United States v. Hadden*, 217 F.3d 841 (4th Cir. July 18, 2000) (unpublished).

On February 5, 2002, Hadden filed a petition under § 2255 in the district court raising claims of ineffective assistance of counsel relating to all three counts. As to the § 924(c) count, Hadden argued that trial counsel was ineffective for failing to object to the jury charge based on *Bailey v. United States*, 516 U.S. 137, 143 (1995) (holding that § 924(c)'s prohibition on the "use" of a gun during the commission of a drug crime requires "active employment of the firearm by the defendant" (emphasis omitted)). On October 3, 2002, the district court entered an order dismissing the petition as it related to the drug counts, but stating, "[a]s to [the § 924(c) count], if the Government does not inform the court that it wishe[s] to retry [Hadden] . . . within sixty (60) days, or if after so informing the court, the Government fails to retry [Hadden] within a reasonable time, the writ will be granted and [Hadden's § 924(c)] conviction and sentence vacated." (J.A. at 37.) On November 12, 2002, the district court entered an order entitled "Judgment in a Civil Case," (R. at 28), which entered judgment on Hadden's § 2255 petition employing the same language used in the district court's written opinion. Hadden appealed that judgment, arguing that the district court erred by denying him relief on the drug counts.

While that appeal was pending, the Government notified the district court that it did not intend to retry Hadden on the § 924(c) count. It also notified the district court that it would not seek to enhance Hadden's sentence under § 2D1.1(b)(1), despite the fact such an enhancement was no longer prohibited in the absence of the sixty-month sentence on the § 924(c) count. On November 22, 2002, without conducting a resentencing hearing, the district court entered an order entitled "Amended Judgment," (J.A. at 39), which dismissed the § 924(c) count and effectively vacated at least a portion of Hadden's original 228 month sentence by entering a new 168 month sentence on the remaining drug counts.

On December 5, 2002, Hadden filed in the district court a document entitled "Objection to Amended Judgment," wherein he argued, inter alia, that he was entitled to a resentencing hearing under § 2255 and Rules 32 and 43 of the Federal Rules of Criminal Procedure. In

this filing, Hadden did not present any argument that he would have made at a resentencing hearing regarding the proper sentence he should have been given, but merely asserted that he had an absolute right to such a hearing so that he could have assistance of counsel to raise issues of downward departure. Before the district court ruled on the Objection to Amended Judgment, we denied a Certificate of Appealability (COA) under 28 U.S.C.A. § 2253 (West 1994 & Supp. 2006) on Hadden's appeal of the Judgment in a Civil Case (the order partially denying/partially conditionally granting Hadden's § 2255 petition) and dismissed that appeal for want of jurisdiction. *United States v. Hadden*, 61 F. App'x 99 (4th Cir. April 17, 2003) (unpublished). The district court later construed Hadden's "Objection to Amended Judgment" as a motion for reconsideration and denied it.

Hadden then appealed the Amended Judgment, repeating his argument that he was entitled to a resentencing hearing. His opening brief, like his motion for reconsideration, did not present any argument that he would have made to the district court at a resentencing hearing regarding the proper sentence he should be given, but merely asserted an absolute right to such a hearing. In opposition, the Government argued that Hadden was not entitled to a resentencing hearing because the district court did not increase his original sentence, and that any error in failing to hold a resentencing hearing was harmless given that Hadden did not present any argument that he would have made to the district court at the hearing. Before Hadden filed his reply brief, the Supreme Court decided *Blakely*, which held that Washington state's determinate sentencing scheme violated the Sixth Amendment. 542 U.S. at 296. Hadden cited *Blakely* in his reply brief, contending that if given a resentencing hearing, he would argue that his 168 month sentence violated the Sixth Amendment as interpreted by *Blakely*.[2]

---

[2]Hadden also stated in his reply brief that he would argue at a resentencing hearing that his criminal history was improperly calculated because one of his prior offenses violated the rule of *Alabama v. Shelton*, 535 U.S. 654 (2002) (holding that defendant who receives a suspended sentence that may result in his eventual incarceration is entitled to counsel in the criminal proceedings against him). Hadden, however, only cited *Shelton* and made no argument how *Shelton* would have helped him. He therefore waived any *Shelton* argument. *See* Fed. R. App. P. 28(a)(9)(A) (providing that "appellant's brief must contain . . . appellant's contentions and the reasons for them"); *United States v. Smith*, 441 F.3d 254, 274 (4th Cir. 2006) (applying Rule 28(a)(9)(A) on criminal appeal).

After Hadden filed his reply brief but before we resolved the appeal, we decided *United States v. Hammoud*, 381 F.3d 316 (4th Cir. 2004) (en banc), *vacated by* 543 U.S. 1097 (2005), which held that the Sentencing Guidelines were not invalid under *Blakely*'s interpretation of the Sixth Amendment.

On November 2, 2004, we affirmed Hadden's 168 month sentence. *United States v. Hadden*, 112 Fed.Appx. 907 (4th Cir. November 2, 2004) (unpublished), *vacated by United States v. Hadden*, 03-7508 (4th Cir. February 15, 2005) (order granting petition for panel rehearing). In the opinion affirming Hadden's sentence, we declined to reach Hadden's argument that he was entitled to a sentencing hearing because we concluded that any error the district court committed in failing to hold such a hearing was harmless, given that Hadden did not present any argument that he would have made to the district court at the hearing. *Id.* at 908. We observed that Hadden had stated in his reply brief that he would make a Sixth Amendment argument based on *Blakely*, but we concluded that Hadden's *Blakely* argument did not undercut our harmlessness conclusion because the argument would have failed under *Hammoud*. *Id.* at 908 n.2.

On November 15, 2004, Hadden filed a petition for panel and en banc rehearing, raising arguments immaterial to this appeal. Before we ruled on the petition for rehearing, the Supreme Court decided *Booker*, which held that the Sentencing Guidelines were invalid under *Blakely*'s interpretation of the Sixth Amendment, and which remedied this problem by making the Sentencing Guidelines advisory. 543 U.S. at 220. Believing it improper post-*Booker* to continue to base a harmlessness conclusion on the then-overruled *Hammoud*, the panel granted Hadden's petition for panel rehearing and requested supplemental briefing on issues relating to *Booker*.

In his supplemental brief, Hadden argued that his amended sentence was constitutionally and statutorily erroneous under *Booker* because it was enhanced based on facts not found by a jury nor admitted by Hadden, and because it was mandatorily entered pursuant to the pre-*Booker* Sentencing Guidelines, respectively. In its supplemental brief, the Government argued that Hadden was not entitled to the benefit of *Booker* because the Amended Judgment entering his 168 month sentence was part of his § 2255 proceeding — not part of his

criminal case — and because *Booker* is not retroactive to § 2255 petitions, *see United States v. Morris*, 429 F.3d 65 (4th Cir. 2005).[3]

## II.

As a court of limited jurisdiction, we are obligated to first consider sua sponte whether we have jurisdiction over Hadden's appeal. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotation marks and alteration omitted)); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . even [if] the parties are prepared to concede it." (internal quotation marks omitted)).

A prisoner who seeks to appeal "the final order in a proceeding under section 2255," 28 U.S.C.A. § 2253(c)(1)(B), must obtain a COA as a "jurisdictional prerequisite" to appeal, *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (explaining that state prisoner may not appeal the district court's denial of a petition under 28 U.S.C. § 2254 without first obtaining a COA). A COA will only issue if the prisoner "has ma[de] a substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding that when the district court denies a § 2254 petition on procedural grounds, a COA will issue only when petitioner can demonstrate both (1) that the prisoner has "made a substantial showing of the denial of a constitutional right" and (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" (internal quotation marks omitted)).[4]

---

[3]Although the Supreme Court granted certiorari last year to decide whether *Blakely* applies retroactively on collateral review, the Court ultimately did not answer the question because it concluded that it lacked jurisdiction over the petitioner's claim. *See Burton v. Stewart*, 549 U.S. ___ (Jan. 9, 2007).

[4]Although *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) and *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) addressed cases involving petitions filed under 28 U.S.C.A. § 2254 (West 1994 & Supp. 2006), according to the plain language of 28 U.S.C.A. § 2253 (West 1994 & Supp. 2006), the COA requirement applies identically to appeals from § 2254 petitions and petitions filed under 28 U.S.C.A. § 2255. *See* 28 U.S.C.A. § 2253(c)(1-2).

Hadden has not obtained a COA in this instance.[5]

If, therefore, the Amended Judgment was the final order in a "proceeding under section 2255," *see* 28 U.S.C.A. § 2253(c)(1)(B), we lack subject-matter jurisdiction over this appeal. If, on the other hand, the Amended Judgment was part of Hadden's criminal case, we have subject-matter jurisdiction over this appeal because a defendant seeking to appeal his sentence in his criminal case need not obtain a COA to do so under 18 U.S.C.A. § 3742(a) (West 2000) (providing for appellate jurisdiction over a "final sentence" entered by the district court without a COA requirement) and 28 U.S.C.A. § 1291 (West 2006) (providing for appellate jurisdiction over "final decisions" of the district court). *See United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006) (holding that jurisdiction exists over defendant's appeal of his sentence under §§ 3742(a) and 1291). Our extensive research has discovered no cases directly addressing this issue.[6]

In deciding whether we have jurisdiction over Hadden's appeal of the Amended Judgment, we first parse the language of § 2255. Next, we examine the implications of the Supreme Court's decision in *Andrews v. United States*, 373 U.S. 334 (1963), on the meaning of

---

[5]Two of Hadden's three arguments on appeal —- that the district court erred under § 2255 and the Federal Rules of Criminal Procedure by failing to give him a resentencing hearing and that the district court statutorily erred under *Booker* because his 168 month sentence was mandatorily entered —- are not constitutional arguments, and therefore cannot warrant a COA. With respect to Hadden's third argument, his constitutional *Booker* argument, such an argument is not available at this time on collateral review. *See United States v. Morris*, 429 F.3d 65 (4th Cir. 2005).

[6]A somewhat analogous case to Hadden's seems to be *Frasch v. Peguese*, 414 F.3d 518 (4th Cir. 2005). In *Frasch*, we held that for purposes of § 2254's statute of limitations — which begins to run at the conclusion of the "direct review" of a criminal case, 28 U.S.C.A. § 2244(d)(1)(A) (West 1994 & Supp. 2006) — a Maryland state prisoner's belated appeal was part of the prisoner's criminal case, not the collateral attack on that case, despite the fact the belated appeal was granted pursuant to a state post-conviction review motion. *Id.* at 522. *Frasch* is of no help here, however, because it interpreted Maryland law, not § 2255.

§ 2255. Then, interpreting § 2255 and *Andrews*, we conclude that a district court order that enters either a "correct[ed]" sentence or the result of a "resentenc[ing]" under § 2255 is a hybrid order that is both part of the § 2255 proceeding and part of the petitioners's underlying criminal case. Finally, we conclude that because the Amended Judgment here corrected Hadden's sentence, and because he appeals only the aspect of the Amended Judgment that is part of his criminal case, we have jurisdiction over his appeal.

A.

Section 2255 provides federal prisoners a mechanism, beyond a direct appeal, for challenging the legality of their sentence. That section provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

> . . . If the court finds that the judgment was [unlawful for various specified reasons], the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

> [Paragraph omitted]

> An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

28 U.S.C.A. § 2255.

Under this section, a district court's resolution of a prisoner's § 2255 petition proceeds in two steps. First, the district court must determine whether the prisoner's sentence is unlawful on one of the specified grounds. *Id.* at para. 2. If the district court determines that the sentence is lawful, the court must deny the petition. If, by contrast, the court determines that the sentence is unlawful, the court "shall

vacate and set . . . aside" the sentence. *Id.* at para. 2. If the district court determines that the prisoner's sentence is unlawful because of some legal defect in his conviction, the court may also vacate the prisoner's conviction. *See, e.g.*, *In re Taylor*, 171 F.3d 185, 186-87 (4th Cir. 1999) (noting that district court vacated petitioner's unlawful § 924(c) conviction).

Second, if the prisoner's sentence (and, depending on the scope of the prisoner's challenge, perhaps one or more of his convictions as well) is set aside, the district court "shall" grant the prisoner an "appropriate" remedy. 28 U.S.C.A. § 2255. While "[t]he § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy," *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992), § 2255 lists the four remedies that are appropriate: (1) "discharge the prisoner," (2) "grant [the prisoner] a new trial," (3) "resentence [the prisoner]," or (4) "correct the [prisoner's] sentence." 28 U.S.C.A. § 2255.[7] Accordingly, the end result of a successful § 2255 proceeding must be the vacatur[8] of the prisoner's unlawful sentence (and perhaps one or more of his convictions) and one of the following: (1) the prisoner's release, (2) the grant of a future new trial to the prisoner, (3) or a new sentence, be it imposed by (a) a resentencing or (b) a corrected sentence. *Id.*[9]

---

[7]As common sense would dictate, a textual analysis of § 2255 reveals that its references to "resentenc[ings]" and the "correct[ion]" of a prisoner's sentence must refer to "'proceeding[s] designed to determine the punishment imposed on a criminal wrongdoer' and, by process of elimination, . . . its reference to a 'new trial' must refer to 'a new proceeding designed to determine whether a defendant should be convicted as guilty of the charged crime.'" *United States v. Stitt*, 459 F.3d 483, 488 (4th Cir. 2006) (Williams, J., concurring) (quoting 28 U.S.C.A. § 2255 and *Black's Law Dictionary* 1393 (8th ed. 2004)).

[8]Here, the district court did not technically vacate Hadden's original sentence. The Amended Judgment, however, entered a new 168-month sentence in place of the original one. That judgment therefore had the practical effect of vacating Hadden's original sentence.

[9]By stating that one of the possible outcomes of a successful § 2255 petition is a "new" sentence, we do not suggest that the "new" sentence must be substantively different from the original one. In fact, when defense counsel fails to notice a timely appeal from his client's original

B.

For purposes of determining when a § 2255 proceeding is complete (and therefore appealable), it is important to note that § 2255 treats a district court's order granting the prisoner a future new trial differently from a district court's order granting the prisoner a future discharge, a future resentencing, or a future proceeding to correct the prisoner's sentence. This difference is brought into clear view by the Supreme Court's decision in *Andrews v. United States*, 373 U.S. 334 (1963), and the consequences that flow from the Court's interpretation of § 2255.

In *Andrews*, the district court granted two prisoners' § 2255 petitions because they had not been afforded the opportunity to allocute at their sentencings and directed that the prisoners be returned to the court for resentencing at some time in the future. *Id.* The Government appealed, and the court of appeals reversed on the merits of the allocution issue. *Id.* The Supreme Court vacated the court of appeals' decision, holding that the district court's order, which contemplated the petitioners' future resentencings but did not actually sentence the petitioners, was a non-appealable interlocutory order under § 2255. *Id.* at 339-40. As the Supreme Court concluded, because a district court's order that contemplates a future sentencing is preliminary to one of the remedies authorized under paragraph 2 of § 2255 — the "resentenc[ing]" of the petitioner — it is therefore not "the order entered on the [§ 2255] motion" under paragraph 4 of § 2255. *Andrews*, 373 U.S. at 338. Because an appeal may be taken only from

_____

sentence, a common remedy in a § 2255 proceeding alleging ineffective assistance of counsel is vacatur and re-entry of the original sentence to allow the defendant the opportunity timely to appeal his sentence. *See, e.g.*, *In re Goddard*, 170 F.3d 435, 436 (4th Cir. 1999) (defendant failed to file appeal because of ineffective assistance of counsel); *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993) (same); *United States v. Torres-Otero*, 232 F.3d 24, 30-31 (1st Cir. 2000)(defendant failed to file appeal because district court failed to inform him of right to appeal); *United States v. Prado*, 204 F.3d 843, 845 (8th Cir. 2000) (same). Indeed, at least one other court has recognized that such a course of action "correct[s]" the defendant's sentence under § 2255. *See Torres-Otero*, 232 F.3d at 30.

"the order entered on the motion," the Supreme Court held that until
the district court actually resentenced the petitioners, the § 2255 pro-
ceeding was not complete, and no appeal could be taken from the dis-
trict court's order contemplating, but not accomplishing, the
prisoners' resentencing. *Id.*; *see also United States v. Stitt*, 459 F.3d
483, 485 (4th Cir. 2006) (applying *Andrews* to hold that a district
court's order that contemplates a future capital resentencing is not
immediately appealable).

Although *Andrews* held only that a district court's order granting
a future resentencing is not immediately appealable because it does
not complete the § 2255 proceeding, *Andrews*' logic has implications
far beyond its actual holding. Several of these implications are rele-
vant here.

First, because paragraph 2 of § 2255 authorizes the district court to
"correct" the prisoner's unlawful sentence in the event it grants the
§ 2255 petition, a district court's order that contemplates the court's
correction of the prisoner's sentence at some time in the future — like
an order that contemplates the district court's conducting a future "re-
sentenc[ing]" — does not complete the § 2255 proceeding and is
therefore not immediately appealable. *Cf. Andrews*, 434 U.S. at 340.

Second, because paragraph 2 of § 2255 authorizes the district court
to "grant [the prisoner] a new trial" in the event § 2255 relief is appro-
priate, a district court's order granting the prisoner a new trial com-
pletes the § 2255 proceeding and is therefore immediately appealable,
despite the fact that such an order contemplates further action by the
district court — *i.e.*, conducting the new trial itself. *See United States
v. Gordon*, 156 F.3d 376, 378-79 (2d Cir. 1998) (holding that a dis-
trict court's order granting a successful § 2255 petitioner a new trial
is immediately appealable); *United States v. Allen*, 613 F.2d 1248,
1250-52 (3d Cir. 1980) (same); *United States v. Dunham Concrete
Prods., Inc.*, 501 F.2d 80, 81-82 (5th Cir. 1974) (same); *cf. Andrews*,
434 U.S. at 340.

Third, because paragraph 2 of § 2255 authorizes the district court
to "resentence" the prisoner or "correct" the prisoner's unlawful sen-
tence in the event § 2255 relief is appropriate, a district court's order
that either enters the result of a resentencing or corrects the prisoner's

sentence completes the § 2255 proceeding and is therefore immediately appealable. *Cf. Andrews*, 434 U.S. at 340.[10]

## C.

Based on *Andrews'* implications, it is clear that when the district court remedies a successful § 2255 petitioner's unlawful sentence by vacating his conviction and sentence and granting him a new trial, the new trial itself is not part of the § 2255 proceeding, but is instead part of the prisoner's underlying criminal case. If, as discussed, the order granting a new trial completes the § 2255 proceeding, then the new trial itself must, by process of elimination, occur in the petitioner's criminal case. Moreover, assuming the prisoner is again convicted, the district court enters an entirely new conviction and sentence. Accordingly, we would have jurisdiction under § 1291 to hear the prisoner's appeal of his new conviction, *see United States v. Al-Hamdi*, 356 F.3d 564, 568 n.2 (4th Cir. 2004) (holding that jurisdiction exists under § 1291 over defendant's appeal of his conviction), and we would have jurisdiction under §§ 3742(a) and 1291 to hear the prisoner's appeal of his new sentence, *Allen*, 446 F.3d at 527. Finally, § 2255 was designed to afford prisoners a mechanism of "collateral review" of their conviction and sentence; that is, independent review beyond the review authorized on a direct appeal. To hold that the new trial itself was part of the § 2255 proceeding (and therefore subject to § 2253's COA requirement) would prevent the defendant from ever obtaining direct appellate review of his new conviction and sentence.

When, however, the district court remedies a § 2255 petitioner's

---

[10]Although not spelled out in the text of § 2255 — or in any of the materials cited by the parties — we "surmise that one reason Congress provided an order granting a future new trial on the issue of guilt is appealable is that it would waste litigants' and the district courts' resources to conduct the new trial — with all of its attendant procedural requirements (selecting the jury, making opening and closing arguments to the jury, jury deliberations, etc.) — only for the appellate court to determine, after the trial was completed, that it was not necessary in the first place." *Stitt*, 459 F.3d at 487 (Williams, J., concurring). These efficiency considerations are not present when the district court conducts a run-of-the-mill resentencing or corrects the prisoner's sentence.

unlawful sentence by resentencing him or correcting his sentence, it is less clear whether the resentencing or correction itself is part of the prisoner's § 2255 proceeding or part of his criminal case. On the one hand, unlike the situation involving the grant of a new trial, the § 2255 petition is not complete until the district court actually resentences the prisoner or corrects the prisoner's sentence. *See Andrews*, 434 U.S. at 340. On the other hand, like the situation that exists after the new trial is complete, the end result of the resentencing or correction of the prisoner's sentence is an entirely new sentence that, arguably, should be appealable under a plain application of §§ 3742(a) and 1291. To hold otherwise would prevent the defendant from ever obtaining direct appellate review of his new sentence.

Because a § 2255 resentencing or correction of the prisoner's sentence thus bears traits of both a § 2255 proceeding and a criminal action, we conclude that an order entering the result of such a resentencing or an order correcting the prisoner's sentence is a hybrid order that is both part of the petitioner's § 2255 proceeding and part of his criminal case. To the extent the order formally completes the prisoner's § 2255 proceeding, it is part of that proceeding, and, accordingly, a prisoner's appeal of that aspect of the order is an appeal of a § 2255 proceeding. For example, if the petitioner seeks to appeal the order by challenging the district court's decision *not to grant relief* on some of the claims in support of his § 2255 petition, he is appealing "the final order in a proceeding under § 2255" and must obtain a COA under § 2253.[11] To the extent the order vacates the original sentence and enters a new criminal sentence, by contrast, the order is part of the prisoner's criminal case, and, accordingly, a prisoner's appeal of that aspect of the order is part of the petitioner's criminal case. For example, if the petitioner seeks to appeal the order by challenging *the relief*

---

[11]It is clear that an order entering the result of such a resentencing or an order correcting the prisoner's sentence is a "final order" for purposes of § 2253(a). Such an order finally resolves the § 2255 petition and leaves the district court with no further action to take on the petition. *See Jones v. Braxton*, 392 F.3d 683, 685-86 (4th Cir. 2004) (holding that district court's dismissal of § 2254 petition as second or successive was "the final order" for purposes of § 2253 where the petition "terminated all proceedings in the district court" (internal quotation marks and emphasis omitted)).

*granted* — *i.e.*, whether the relief was "appropriate" under § 2255, whether the new sentence was in conformity with the Constitution or Sentencing Guidelines, *etc.* — he is appealing a new criminal sentence and therefore need not obtain a COA under §§ 3742(a) and 1291.

This interpretation, while somewhat novel, is supported by the uncontroverted understanding that habeas corpus can be "hybrid" in nature. *O'Brien v. Moore*, 395 F.3d 499, 505 (4th Cir. 2005) ("Because habeas actions have both criminal and civil aspects, courts have routinely regarded them as 'hybrid' actions."); *United States v. Jones*, 215 F.3d 467, 469 (4th Cir. 2000) (noting that "habeas actions are a unique hybrid of civil and criminal"); *Smith v. Angelone*, 111 F.3d 1126, 1130 (4th Cir. 1997) ("Habeas corpus cases are, in effect, hybrid actions whose nature is not adequately captured by the phrase 'civil action;' they are independent civil dispositions of completed criminal proceedings[,] . . . which are intended to punish and require various constitutional guarantees." (internal quotation marks omitted)); *Sloan v. Pugh*, 351 F.3d 1319, 1323 (10th Cir. 2003) (concluding that "habeas proceedings are unique or hybrid types of cases (internal quotation marks omitted)); *United States v. Johnston*, 258 F.3d 361, 365 (5th Cir. 2001) (noting that courts had concluded that "a § 2255 motion is a hybrid, with characteristics indicative of both civil and criminal proceedings").[12] Thus, although the proceeding is technically civil in nature, *see Woodford v. Ngo*, 126 S. Ct. 2378, 2386 n.2 (2006) ("Habeas corpus is an original . . . civil remedy for the enforcement of the right to personal liberty, rather than a stage of the . . . criminal proceedings." (internal quotation marks omitted)), the remedy entered pursuant to the proceeding is often technically criminal in nature, as it relates directly to the prisoner's criminal punish-

---

[12]We recognize that the Supreme Court has recently reaffirmed that "[h]abeas corpus is an original . . . civil remedy for the enforcement of the right to personal liberty, rather than a stage of the . . . criminal proceedings." *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 n.2 (2006) (quoting *Fay v. Noia*, 372 U.S. 391, 423-24 (1963) (alteration omitted)). This statement, however, does not demand a conclusion that every *remedy* entered pursuant to § 2255 is civil in nature, because the statement relates only to the prisoner's challenge to his confinement, not the district court's decision to impose new criminal punishment.

ment, *see Ex parte Tom Tong*, 108 U.S. 556, 559 (1883) ("Proceedings to enforce civil rights are civil proceedings, and proceedings for the punishment of crimes are criminal proceedings.").

In addition, our interpretation of § 2255 serves the policies behind §§ 2253 and 2255. We have stated that the goal of § 2255 review is to place the defendant "in exactly the *same* position he would have been" had there been no error in the first instance. *United States v. Silvers*, 90 F.3d 95, 99 (4th Cir. 1996) (emphasis added); *see also United States v. Hillary*, 106 F.3d 1170, 1172 (4th Cir. 1997) (noting that "the most 'appropriate' remedy is to put § 2255 [petitioners] in the same boat as direct appellants"). Were we to hold that a successful § 2255 petitioner who received a corrected sentence or a resentencing had to obtain a COA to appeal matters relating to the propriety of his new sentence, he would be placed in a *worse* situation than he would have been had there been no error in the first instance. Most obviously, because a COA will not issue for allegations of non-constitutional error, he would not be able to obtain appellate review of any purely statutory errors at his sentencing, such as an error in construing the Sentencing Guidelines.

Moreover, one of the central purposes of § 2253's COA requirement is to prevent the Government from having to respond to meritless appeals from the denial of habeas relief. *See Miller-El v. Cockrell*, 537 U.S. at 350; *Davis v. Jacobs*, 454 U.S. 911, 917 (1981) (Rehnquist, J., dissenting from the denial of petitions for certiorari). One reason Congress may have sought to discourage meritless appeals in the habeas context — but not the context of direct criminal appeals — is that habeas review occurs after the prisoner has already had an opportunity on direct appeal to challenge his conviction and sentence. When a prisoner seeks to appeal the order entering the result of a § 2255 resentencing or a corrected sentence, that order has never been subjected to appellate review. Section 2253's policy justification would be over-served if we were to interpret the statute to discourage appeals over sentences that had not yet been subject to appellate review.[13]

---

[13]Despite the fact that we twice requested supplemental briefing on the difficult jurisdictional issue presented in this appeal, the Government

We therefore hold that an order either correcting the prisoner's sentence or entering the result of a resentencing is a hybrid order that is both part of the petitioner's § 2255 proceeding and part of his criminal case. If the petitioner seeks to appeal the order by raising arguments relating to the district court's decision whether to grant relief on his § 2255 petition, he is appealing "the final order in a proceeding under § 2255" and therefore must obtain a COA under § 2253. If, on the other hand, the petitioner seeks to appeal matters relating to the propriety of the *relief* granted, he is appealing a new criminal sentence and therefore need not comply with § 2253's COA requirement.

### D.

Applying this rule here, we conclude that Hadden's appeal of the Amended Judgment is part of his criminal case — not his § 2255 proceeding — and, accordingly, that he does not need a COA to pursue this appeal. First, it is clear that the Amended Judgment neither "discharg[ed]" Hadden nor "grant[ed him] a new trial" under § 2255. Instead, because the Amended Judgment gave Hadden a new sentence, it either "correct[ed]" Hadden's original sentence or "resentence[d]" him under § 2255. Under our analysis in Part II.C, *supra*, the Amended Judgment is therefore a hybrid order that is part of both Hadden's criminal case and his § 2255 proceeding.

Second, in this appeal Hadden appeals only that aspect of the Amended Judgment that is part of his criminal case. Hadden's arguments on appeal — that the district court was required to conduct a resentencing hearing under Criminal Rule 43 and § 2255 — do not challenge the district court's conclusion that relief was not warranted with respect to his drug convictions, but instead challenge whether the relief that was ordered with respect to his § 924(c) conviction was an

---

barely challenges this interpretation of § 2255. In fact, its only argument in support of its contention that Hadden's appeal is part of his § 2255 proceeding is that because the district court granted Hadden relief pursuant to § 2255, that relief must be part of his § 2255 proceeding. Such a conclusion — which would also hold that new trials ordered pursuant to § 2255 and sentences that are re-entered when the prisoner is denied his right to appeal are part of the § 2255 proceeding — is plainly incorrect.

appropriate form of relief. Because the district court's remedy techni-
cally vacated Hadden's original sentence by entering a new corrected
sentence, the remedy was criminal in nature as it related directly to
Hadden's criminal punishment. We therefore conclude that we have
jurisdiction over Hadden's appeal of the Amended Judgment under
§§ 3742(a) and 1291, and turn to the merits of the appeal.[14]

### III.

On the merits, Hadden argues that (1) the district court erred by
failing to conduct a resentencing hearing once it determined that relief
was warranted on his § 2255 petition and (2) the district court com-
mitted constitutional and statutory *Booker* error. We address these
arguments in turn.

---

[14]We note that if Hadden had, in this appeal, challenged the district
court's decision partially to deny him relief on his § 2255 claims, he
would have been challenging that part of the Amended Judgment that
was part of his § 2255 petition, not his criminal case. Accordingly, we
only would have had jurisdiction over such a challenge upon issuance of
a COA.

In this appeal, of course, Hadden did not challenge the district court's
decision partially to deny him relief on his § 2255 claims. Instead, before
the district court entered the Amended Judgment, Hadden appealed the
Judgment in a Civil Case challenging the district court's partial dismissal
of his § 2255 petition. We dismissed that appeal because Hadden's argu-
ments on appeal failed to warrant the issuance of a COA.

We now recognize that we should not have dismissed the earlier
appeal because Hadden's arguments failed to warrant a COA; instead,
we should have dismissed that appeal because the Judgment in a Civil
Case was not appealable under *Andrews*. Our technical error in resolving
Hadden's earlier appeal plainly did not prejudice him; had we properly
applied *Andrews* to that appeal, we still would have dismissed the appeal,
just on different grounds. We therefore conclude that it would be a use-
less act to recall the mandate in our earlier unpublished opinion to correct
what is, in effect, an error only in the grounds given for an otherwise
proper dismissal.

## A.

First, Hadden argues that the district court erred under § 2255 and Rules 32 and 43 of the Federal Rules of Criminal Procedure by failing to conduct a formal resentencing before entering the Amended Judgment. We review the form of relief the district court awards to a successful § 2255 petitioner for abuse of discretion. *See United States v. Torres-Otero*, 232 F.3d 24, 29-30 (1st Cir. 2000); *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998). For the reasons that follow, we conclude that the district court did not abuse its discretion in failing to conduct a resentencing hearing.

## 1.

We turn first to Hadden's argument that the district court erred under § 2255 by failing to conduct a formal resentencing hearing.

As previously noted, § 2255 authorizes the district court to take one of four distinct courses in remedying a successful § 2255 petitioner's unlawful sentence: (1) "discharge the prisoner," (2) "grant [the prisoner] a new trial," (3) "resentence [the prisoner]," or (4) "correct the [prisoner's] sentence." As also noted, it is clear that the Amended Judgment, which gave Hadden a new sentence, must have either "correct[ed]" Hadden's original sentence or entered the result of a "resentenc[ing]." It is equally clear that by using the different terms — "correct" and "resentence" — § 2255 refers to different concepts. *See Cunningham v. Scibana*, 259 F.3d 303, 308 (4th Cir. 2001) ("The use of different terms within related statutes generally implies that different meanings were intended." (quoting 2A Norman J. Singer, *Statutes and Statutory Construction* § 46.06, at 194 (6th ed. 2000))).

As a descriptive matter, we think it is more accurate to say that the Amended Judgment "correct[ed]" Hadden's original sentence rather than that the Amended Judgment entered the result of a "resentenc-[ing]." To "correct" means to "make or set right." *Merriam Webster's Collegiate Dictionary* 280 (11th ed. 2004). This is precisely what the district court did here; it removed the error from Hadden's original sentence — and thereby made it "right" — by excising the unlawful 60 month term on the § 924(c) count and re-entering Hadden's original 168 month term on the drug counts. Moreover, the district court

did not conduct any of the procedures that would have been required at a full-blown sentencing. The probation office did not prepare a new PSR, the district court did not accept any new evidence or any legal argument, and Hadden was not given the opportunity to allocute, all of which would have been required if the entry of the Amended Judgment were considered a resentencing. *See* Fed R. Crim. P. 32; Fed. R. Crim. P. 43. If the phrase "correct[ing the prisoner's unlawful] sentence" means anything in this context, it must describe what the district court did here. *See also*, *United States v. Erwin*, 277 F.3d 727, 731 (5th Cir. 2001) (concluding that the district court's entry of an amended judgment, which re-entered a portion of the prisoner's sentence, was a "correction" of the sentence, not a resentencing); *Rust v. United States*, 725 F.2d 1153, 1154 (8th Cir. 1984) (noting, where district court had vacated one of petitioner's convictions and modified multi-count sentence by striking the term of imprisonment on the vacated count, that "the trial court was not required to resentence [the petitioner]").

The fact that it is proper, as a descriptive matter, to call the Amended Judgment the "correct[ion]" of Hadden's original sentence does not, of course, compel the conclusion that it was proper, as a normative matter, for the district court to "correct" Hadden's sentence in lieu of conducting a formal "resentenc[ing]". Indeed, Hadden argues that our decision in *Hillary* compels us to conclude that the district court erred in failing to conduct such a resentencing. In *Hillary*, the petitioner had been convicted of violating §§ 841(a)(1) and 924(c). 106 F.3d at 1170. He filed a petition under § 2255 alleging that his § 924(c) conviction violated *Bailey*. *Id.* at 1171. The district court agreed and vacated the § 924(c) conviction and its accompanying term of imprisonment, leaving the sentence on the § 841 count intact. *Id.* The Government argued to the district court that it should conduct a resentencing to enhance Hillary's sentence under § 2D1.1(b)(1), but the district court held that it lacked jurisdiction under § 2255 to conduct a resentencing. *Id.* at 1171. On the Government's appeal, we vacated and remanded for resentencing, noting that § 2255 gives the district courts "broad and flexible power . . . to fashion an appropriate remedy," *id.* at 1171 (internal quotation marks omitted), and holding that this power included the authority to conduct a resentencing, *id.* at 1172-73.

*Hillary* does not help Hadden. *Hillary* held only that the district court is *authorized* to conduct a resentencing in awarding relief pursuant to § 2255, not that the district court is *required*, in resolving every § 2255 petition, to conduct a resentencing. *See id.* at 1172 (concluding that resentencing is "permit[ted]" when a § 924(c) conviction is vacated on collateral review); *United States v. Smith*, 115 F.3d 241 (4th Cir. 1997) (determining that the district court "had jurisdiction" to resentence the defendant after a successful collateral attack of his § 924(c) conviction); *United States v. Hawthorne*, 94 F.3d 118, 122 (4th Cir. 1996) (noting that the Government "may" pursue resentencing if it elects to forgo a second trial on the § 924(c) charge). Hadden argues, however, that the district court erred in failing to conduct a resentencing here because he, like the Government in *Hillary*, requested a resentencing. This argument is based on a misreading of *Hillary*. We did not direct that resentencing take place in *Hillary* because the Government requested it. Instead, we remanded the case with instructions to conduct a resentencing because the district court's refusal to do so in the first instance was based on the erroneous legal conclusion that it lacked the authority to resentence Hillary and because the district court generally may not make a prisoner's sentence more onerous without conducting a resentencing. *See, e.g., Erwin*, 277 F.3d at 731 (affirming district court's decision to modify prisoner's sentence to account for vacated conviction without conducting a resentencing because the modification was "a downward correction of [the prisoner's] illegal sentence"); *United States v. Moree*, 928 F.2d 654, 655-56 (5th Cir. 1991) ("We have long recognized the distinction between proceedings in the district court that modify an existing sentence and those that impose a new sentence after the original sentence has been set aside. In the former instance, [a resentencing with the defendant present] usually is not required,[ ] unless the modification makes the sentence more onerous."); *Rust*, 725 F.2d at 1154 (noting, where district court had vacated one of the petitioner's convictions and modified the multi-count sentence by striking the term of imprisonment on the vacated count, that "the trial court was not required to resentence [the petitioner]").[15]

---

[15]We need not address whether this rule has any exceptions, such as when the district court corrects a sentence under Rule 35(a) of the Federal Rules of Criminal Procedure by increasing the sentence.

Here, by contrast, the Government did not seek to enhance Hadden's 168 month sentence on his remaining drug counts, and the district court did not, in fact, increase that portion of his earlier sentence, much less his original 228 month sentence. Therefore, just as it is clear, as a descriptive matter, that the district court *actually* "correct[ed]" Hadden's sentence under § 2255, it is also clear, as a normative matter, that the district court *properly* "correct[ed]" Hadden's sentence under § 2255. The text of § 2255 clearly affords the district courts the authority to "correct" a prisoner's unlawful sentence without conducting a formal "resentenc[ing]" hearing, and nothing in *Hillary* suggests otherwise.

Hadden further contends that the district court erred by failing to conduct a formal resentencing because we have adopted a sentence-package theory of sentencing. Under this theory, a sentence is not merely the sum of its parts; instead, because the district court crafts a sentence by considering all of the relevant factors as a whole, an appellate court that rejects one of the grounds on which the sentence is based unbundles the entire sentence package. If, then, the appellate court vacates and remands a prisoner's sentence because of a sentencing error, the district court may not simply re-enter the non-offending portions of the original sentence, but must conduct a new resentencing hearing to reformulate the entire sentence package.

We do not deny that the sentence-package theory has support in our case law. The sentence-package theory, however, does not help Hadden. Here, we — the appellate court — did not conclude that Hadden's original sentence was unlawful, vacate that sentence, and remand to the district court; instead, the *district court* itself — by striking the § 924(c) sentence and reentering the remaining sentence — indicated that *it* was satisfied with the resulting sentence. The district court has "broad and flexible power" under § 2255 to determine the nature and scope of the remedial proceedings in the first instance, *Hillary*, 106 F.3d at 1171 (internal quotation marks omitted), and nothing in the sentence-package theory forbids the district courts from doing what the text of § 2255 clearly permits: "correct[ing]" a prisoner's unlawful sentence without conducting a formal "resentenc[ing]."

2.

Hadden also argues that Criminal Rules 32 and 43 required the district court to conduct a resentencing hearing before imposing his 168 month sentence. This argument is without merit. In relevant part, Criminal Rule 32 sets forth procedures that must occur at "[s]entencing." For its part, Criminal Rule 43 provides that a defendant must be present at "sentencing." Fed R. Crim. P. 43(a)(3).[16] *See also United States v. Lawrence*, 248 F.3d 300, 302 (4th Cir. 2001) ("[T]he plain text of Rule 43 mandates that a defendant be physically present at sentencing . . . ."). For reasons already explained, however, we do not believe that the district court conducted a "sentencing," but instead "correct[ed]" Hadden's sentence. Criminal Rules 32 and 43 are therefore inapplicable.

B.

Second, Hadden argues that his corrected sentence was statutorily erroneous under *Booker* because the district court mandatorily applied the Sentencing Guidelines. Hadden did not raise his statutory *Booker* argument below, so we review it for plain error. *See United States v. Hughes*, 401 F.3d 540, 547 (4th Cir. 2005).

Under plain error review, the defendant must show that (1) the district court committed error, (2) the error was plain, and (3) the error affected his substantial rights. *Id.* at 547-55. If the defendant complains of statutory *Booker* error, he can show that the error affected his substantial rights only if the district court's "treatment of the guidelines as mandatory affected the district court's selection of the sentence imposed." *United States v. White*, 405 F.3d 208, 223 (4th Cir. 2005) (internal quotation marks and alteration omitted). If the defendant makes this three-part showing, correction of the error nevertheless remains within our discretion, which we should not exercise unless "the error seriously affects the fairness, integrity or public rep-

---

[16]We cite to the current version of the Federal Rules of Criminal Procedure. The differences in the current version and the version in effect at the time that the district court entered the Amended Judgment are not relevant for purposes of this opinion.

utation of judicial proceedings." *See United States v. Hughes*, 401 F.3d 540, 555 (4th Cir. 2005).

We have reviewed the record in this case and have discovered no non-speculative grounds on which to conclude that the district court would have given Hadden a lower sentence had it been applying a discretionary Guidelines regime. The district court made no statements at Hadden's original sentencing hearing suggesting that it was dissatisfied either with Hadden's 168 month concurrent terms on his drug counts or his overall 228 month sentence. Moreover, neither the Amended Judgment nor the district court's written order denying Hadden's Objection to Amended Judgment contains any indication that the district court would have given Hadden less than a 168 month sentence on the drug counts were it to apply the Guidelines in a discretionary fashion. We therefore conclude that Hadden has not satisfied his burden of showing that any statutory *Booker* error the district court committed affected his substantial rights.

C.

Finally, Hadden argues that the district court violated his Sixth Amendment rights at sentencing by attributing drug weights to him that were neither admitted by Hadden nor found by a jury. Although Hadden's argument has merit, we decline to recognize the Sixth Amendment error because of the circumstances of this case.

Because Hadden did not make his constitutional *Booker* argument below, we review it for plain error. *See United States v. Hughes*, 401 F.3d 540, 547 (4th Cir. 2005). "[A] district court commits plain error that affects a defendant's substantial rights when, operating under a pre-*Booker* mandatory Guidelines regime, it imposes a sentence that exceeds the maximum Guideline sentence authorized by the jury verdict [or the facts admitted by the defendant]." *United States v. Smith*, 441 F.3d 254, 271 (4th Cir. 2006); *see Booker*, 543 U.S. at 244 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.").

We have little trouble concluding that there was Sixth Amendment error here, the error was plain, and it affected Hadden's substantial rights. *See, e.g.*, *United States v. Olano*, 507 U.S. 725, 734-35 (1993). The jury did not attribute a specific weight to Hadden and he did not admit to any specific weight. Instead, the district court made the drug quantity findings. In using those judicial findings of fact to increase Hadden's sentence beyond the maximum authorized by the jury verdict, the district court violated Hadden's Sixth Amendment rights.[17]

Nevertheless, we decline to recognize the plain error. *See, e.g.*, *id.* ("If the forfeited error is 'plain' and 'affects substantial rights,' the court of appeals has authority to order correction, but is not required to do so." (internal alteration omitted)). The Supreme Court has explained that we should only "correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and alteration omitted). In the constitutional *Booker* context, this Court refused to recognize a Sixth Amendment error in *Smith*.

In *Smith*, the defendant's sentence — because of judicial factfinding — exceeded the maximum Guideline sentence allowed based on the jury verdict alone. We held that "[e]ven though the Sixth Amendment required that the jury, rather than the trial judge, make the drug quantity findings that increased [the defendant's] sentence, the evidence concerning drug quantity was overwhelming and [essentially] uncontroverted." *Id.* at 272; *see also United States v. Cotton*, 535 U.S. 625, 633 (2002) (declining to recognize Fifth Amendment error because drug quantity evidence was "overwhelming and essentially uncontroverted" (internal quotation marks omitted)); *Johnson v. United States*, 520 U.S. 461, 470 (1997) (declining to recognize Sixth Amendment error where the element of materiality in a perjury conviction was found by a judge rather than a jury because the evidence concerning materiality was "overwhelming" and "essentially uncontroverted"); *United States v. Promise*, 255 F.3d 150, 164 (4th Cir. 2001) (en banc) (declining to recognize plain error in a situation simi-

---

[17]We note that we of course offer no criticism of the district court for its Sixth Amendment error because the court "followed the law and procedure in effect at the time of [Hadden's] sentencing." *United States v. Hughes*, 401 F.3d 540, 545 n.4 (4th Cir. 2005).

lar to Hadden's when the judge violated the Sixth Amendment by making drug weight findings because the evidence was overwhelming and "had the indictment included the [drug quantity], the jury would have found [the defendant] guilty beyond a reasonable doubt").

Here, we recognize that the drug quantities attributable to Hadden were not uncontroverted at his original sentencing,[18] as Hadden in fact objected to the findings made in his PSR. But Hadden's objection was specific; he argued that the district court should have concluded that the quantities attributable to him should have amounted in an offense level of 32, as opposed to 34. Accordingly, that there was at least enough methamphetamine attributable to him to constitute an offense level of 32 *was* uncontroverted. *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(4) (1998) (defining level 32 in part as "[a]t least 500 G but less than 1.5 KG of Methamphetamine, or at least 100 G but less than 300 G of Methamphetamine (actual)"). Even if the district court had agreed with Hadden and given him a total offense level of 32, his sentencing range would have been 135-168 months' imprisonment, and the district court's ultimate sentence of 168 months on the drug counts therefore did not exceed the maximum sentence that could have been imposed under the offense level that Hadden requested. Moreover, when Hadden's corrected sentence was entered — the sentence he now appeals — he did not make any objection to his offense level.[19]

Aside from being "essentially uncontroverted," the evidence that

---

[18]Hadden, of course, is appealing his new sentence, not his original sentence. Nonetheless, his constitutional *Booker* claim is centered on his argument that the district court violated his Sixth Amendment rights during his original sentencing. Implicitly, then, he is arguing that the district court likewise erred in relying on the same judicially found facts when correcting his sentence.

[19]To be sure, we are not suggesting that Hadden's silence or his arguing for an offense level of 32 was sufficient to be considered an "admission" of the requisite drug quantities. *See United States v. Milam*, 443 F.3d 382, 387 (4th Cir. 2006) ("Any admission of fact must, of course, be of sufficient clarity and kind to justify taking the fact from the jury."). These factors do, however, go far to show that the relevant drug quantities were uncontroverted.

Hadden had at least enough methamphetamine to qualify for an offense level of 32 was also "overwhelming." *See, e.g.*, *Johnson*, 520 U.S. at 470. During Hadden's original sentencing hearing, the district court went to great lengths to insure that Hadden was held accountable only for methamphetamine quantities that were overwhelmingly supported by the record.[20] Thus, we have no doubts, just as we had none in *Promise* and *Smith*, that had the indictment included the specific drug quantities necessary to support Hadden's sentencing range, the jury would have found those weights attributable to Hadden beyond a reasonable doubt. *See Promise*, 255 F.3d at 164. We therefore decline to recognize the clear Sixth Amendment error.[21]

## IV.

For the foregoing reasons, we conclude that we have jurisdiction over this appeal and affirm.

*AFFIRMED*

---

[20]For a brief summary of this evidence, *see* Part I of this opinion.

[21]We note that if we had recognized the error, Hadden might have faced an even higher offense level (36) on remand because the Government would have been free to seek a two-level enhancement of his sentence under U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (1998) (setting forth an enhancement for possession of a gun during the commission of a drug crime), an enhancement that was unavailable during Hadden's original sentencing because of his (now vacated) § 924(c) conviction.