WYNN, Circuit Judge,
dissenting:
The majority opinion will, without a doubt, “drive citizens to rub[] their eyes and scratch[ ] their heads.” United States v. Foster, 674 F.3d 391, 395 (4th Cir.2012) (Wilkinson, J., concurring in denial of rehearing en banc). “If one were to inquire of an objectively reasonable person on the street whether” a court should allow the correction of a sentencing mistake caused solely by its own error—an error that will likely cost a man eight years of freedom— no doubt the citizen’s “response would be ‘Of course. Why do you ask?’ ” Id.
Habeas corpus allows courts “‘to cut through barriers of form and procedural mazes’ ” to effectuate the writ’s ultimate purpose: safeguarding individual freedom against lawless state action and ensuring “that miscarriages of justice ... are surfaced and corrected.’ ” Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cnty., Cal., 411 U.S. 345, 350, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (quoting Harris v. Nelson, 394 U.S. 286, 291, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)). Not surprisingly, then, the Supreme Court has repeatedly affirmed that “ ‘the principles of comity and finality informing’ ” procedural restrictions on habeas corpus proceedings “ ‘must yield to the imperative of correcting a fundamentally unjust’” punishment. Schlup v. Delo, 513 U.S. 298, 320-21, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting Murray v. Carrier, 477 U.S. 478, 495, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). according “the relief necessary to correct ... particular injustices,” the Supreme Court recently made plain that there exists a “presumption in favor” of equitably tolling statutes of limitations to habeas corpus petitions. Holland v. Florida, 560 U.S. 631, 646, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (internal quotation marks and citation omitted).
This is a case that demands a yielding of “mechanical rules” in favor of “the relief necessary to correct” a mistake of our own making. Id. Deangelo Whiteside was sentenced as a career criminal in July 2010. In August 2011, with United States v. Simmons, 649 F.3d 237 (4th Cir.2011) (en banc), this Court corrected its misinterpretation of law that had led courts in this Circuit to ignore the particular circumstances of defendants’ predicate convictions for sentencing purposes. Undisput-edly, in light of Simmons, Whiteside was no career criminal, and his enhanced “career criminal” sentence was premised on this Court’s erroneous interpretation of the law. Accordingly, in May 2012, White- *191 side petitioned the district court to vacate his sentence. But because more than a year had passed since his sentencing, Whiteside’s petition was deemed tardy. Today, this Court refuses to set aside that formalistic time bar in the name of equity.
Strikingly, neither the law nor the facts of this case have changed. All that has changed is our interpretation of the law. In other words, we either forgot that “it’s our job to call balls and strikes”—or we simply got the call dead wrong. Confirmation Hearing on the Nomination of John G. Roberts, Jr. to Be Chief Justice of the United States: Hearing Before the S. Comm, on the Judiciary, 109th Cong. 56 (2005) (statement of Judge John G. Roberts, Jr.). Regardless of whether this Court’s error was grounded in judicial activism or an honest mistake, it certainly was not Deangelo Whiteside’s fault—yet today the majority comes to the stunning conclusion that he must pay the price.[1]
Further, the other interests at stake here eclipse our interest in finality. Indeed, “if finality were our only or even the more important institutional goal, we would not permit any postconviction relief at all.” Hawkins v. United States, 724 F.3d 915, 923 (7th Cir.2013) (Rovner, J., dissenting from denial of rehearing). It is not finality, but rather “fairness [that] is the lifeblood of our system of justice,” and “justice requires the ability to rectify substantial uncontroverted judicial errors that cause significant injury. This is why in our anthropomorphization of Justice, she is wearing a blindfold, and not running shoes.” Id. Denying relief for the sake of finality is particularly nonsensical where, as here, the issue is a purely legal one with no evidentiary or spoliation problems, the sentence is federal and thus skirts comity concerns, the financial cost of incarcerating Whiteside for years he should not spend in jail is surely enormous, and the work associated with correcting Whiteside’s sentence—something perhaps not even necessitating a formal resentencing hearing, see, e.g., United States v. Hadden, 475 F.3d 652, 669 (4th Cir.2007)—is likely minimal.[2]
“Even appellate judges are endowed with brains in the hope and expectation that they will be used to obvious purpose.” Foster, 674 F.3d at 394 (Wilkinson, J., concurring in denial of rehearing en banc). If rectifying a mistake of our own creation—one that will cost a man eight years of his freedom—does not constitute an “obvious purpose,” I do not know what does. Respectfully, I dissent.

. The majority opinion spills considerable ink explaining why the judiciary should not bear the burden of its own mistake. Those who were wrongly (over-)sentenced will surely sleep easier knowing that the courts are not being overworked by too many “tickets to being resentenced.” Ante at 186. The prison staff that must look after wrongly-imprisoned defendants—not to mention the taxpayers who foot the hefty bill for their (wrongful) incarceration—might, however, take issue with the majority’s calculus.

. The district court did not err in applying pre-Simmons case law and sentencing White-side as it did. The error was ours and ours alone. To the extent the majority’s decision to deny habeas relief stems from its reluctance to reverse the district court's dutiful application of Fourth Circuit precedent, the majority's decision is misguided. When an individual’s liberty is at stake, I have every confidence that our district court colleagues understand that our role as an appellate court is to correct legal errors, including our own.