**UNITED STATES of America,**
**Petitioner-Appellee,**

v.

**DUNHAM CONCRETE PRODUCTS, INC., Louisiana Ready-Mix Company, Anderson-Dunham, Inc., Respondents-Appellants.**

**UNITED STATES of America,**
**Petitioner-Appellant,**

v.

**Ted F. DUNHAM, Jr., Respondent-Appellee.**

**No. 74–1903.**

United States Court of Appeals,
Fifth Circuit,
Sept. 26, 1974.

James A. McPherson, New Orleans, La., Marcus A. Hollabaugh, Washington, D. C., Victor A. Sachse, Baton Rouge, La., for respondents-appellants.

James D. Carriere, Asst. U. S. Atty., New Orleans, La., Carl D. Lawson, Atty., Dept. of Justice, Washington, D. C., for petitioner-appellee.

Before WISDOM, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

This is a sequel to United States of America v. Dunham Concrete Products, Inc., et al., 475 F.2d 1241 (5th Cir. 1973). In that opinion we affirmed Sherman and Hobbs Act convictions of

Ted Dunham, Jr., and certain of his corporations stemming from Dunham's use of labor racketeers against persons who purchased supplies from his competitors.[1] Certiorari was denied.[2] Dunham and the corporations then filed various motions for post-conviction relief. Dunham's § 2255[3] motion was granted and a new trial ordered as to him; all corporate motions were denied. The United States appeals the Dunham order, the corporations theirs. We reverse as to Dunham and affirm as to the corporations.

### May the United States Appeal?

■ Dunham questions our jurisdiction to entertain this appeal. It is said that the order granting him a new trial is not "final" in the sense required by § 2255, and that the appeal is thus piecemeal under such authorities as Andrews v. United States, 373 U.S. 334, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963); Collins v. Miller, 252 U.S. 364, 40 S.Ct. 347, 64 L. Ed. 616 (1920), and United States v. Bishopp, 286 F.2d 320 (2d Cir. 1960). And while he does not frankly avow a view that the appealability of a § 2255 order is to be determined by the finality of its effect on the underlying criminal proceeding, he does seek to find footing halfway across the abyss: finality, it is said, " . . . has meaning only in the context of the original criminal proceeding . . . ."

We are not persuaded. The pertinent language of § 2255 runs:

> "An appeal may be taken . . . as from a final judgment on an application for a writ of habeas corpus."

This Circuit has long taken the view that § 2255 proceedings are, like habeas matters, civil actions mainly standing on their own bottoms and that when an order is entered in the § 2255 proceeding which satisfies established notions of finality, either party prejudiced may appeal as in other civil actions. United States v. Williamson, 255 F.2d 512, 515–516 (5th Cir. 1958), cert. denied 358 U.S. 941, 79 S.Ct. 348, 3 L.Ed.2d 349 (1959). What results is no more a piecemeal appeal than a § 2255 proceeding is a piecemeal trial. Other circuits have taken similar views, e. g. Gray v. Swenson, 430 F.2d 9 (8th Cir. 1970); United States v. Kelly, 269 F.2d 448 (10th Cir. 1959).

Collins is not to the contrary. It involved a single judgment in a habeas proceeding which denied the writ on one hand but granted it on two others, remanding these for further proceedings. The judgment was thus not final *for purposes of the habeas corpus proceeding* " . . . since [as the anonymous author of the headnotes correctly concludes] only one branch of the case having been disposed of below, none of it is reviewable." Insofar as Bishopp may stand for a reading of Collins as resting on grounds other than the incompleteness of the habeas corpus proceeding itself, we decline to follow it. Nor do we view Andrews as contra: there the United States' attempt to appeal from a resentencing order was dismissed since, as Mr. Justice Stewart noted, " . . . there could be no final disposition of *the § 2255 proceedings* until the petitioners were resentenced." 373 U.S., at 340, 83 S.Ct., at 1240 (emphasis added). The Court notes also that, since until the petitioners are resentenced it cannot be known whether the Government is hurt, the Andrews situation demonstrates the basis of the rule against piecemeal appeals.

In our case the § 2255 proceedings have ended with a order requiring the Government, if it wishes to persist in an effort to punish Dunham, to return to

---

1. Dunham, through the corporations, dealt in concrete products in the Baton Rouge area. By his procurement, persons who patronized his competitors suffered labor difficulties unrelated to any legitimate labor grievance, destruction of thousands of dollars worth of concrete pipe, assaults by gangs of thugs employing clubs, chains and shotguns, etc.

2. 414 U.S. 832, 94 S.Ct. 65, 38 L.Ed.2d 66 (1973).

3. 28 U.S.C. § 2255.

Square One and recommence its effort ab initio. A more final termination of the § 2255 action can scarcely be imagined; what possible further purpose could it serve? We have jurisdiction.

## Dunham's New Trial

■ The district court vacated Dunham's conviction and sentences, being unable to say beyond a reasonable doubt that the jury did not convict him of non-existent crimes: "conspiracy to attempt to monopolize" and "conspiracy to attempt to extort." Neither of these acts being denounced by law, the court envisioned a want of due process in the possibility that Dunham had been sentenced for non-criminal acts. How the sentencing court found itself in such a posture may be thought to require some explanation.

The indictment of Dunham and his corporations comprised five counts. Count 1 charged conspiracy in restraint of trade (Sherman Act § 1), Counts 2 and 3 conspiracy to monopolize and attempt to monopolize, respectively (Sherman Act § 2), and Counts 4 and 5 conspiracy to extort and an attempt to extort, respectively (Hobbs Act). In response to a motion to strike Count 3, the court ruled that it charged an attempt to monopolize and not a conspiracy to attempt to do so. The United States has taken the position that Count 5 should be similarly construed, to charge an attempt to extort. Since Counts 3 and 5 are of especial significance, we set them out so far as pertinent.[4]

At trial the jury was correctly instructed, *inter alia*, that attempts to monopolize may be by concerted as well as by unilateral action, so that a member of a conspiracy to monopolize may be

4. [Count 3]
  22. Beginning early in 1966, the exact date being to the Grand Jurors unknown, and continuing thereafter up to and including the date of the return of this indictment, the defendants and co-conspirators have attempted to monopolize, the aforesaid interstate trade and commerce in violation of Section 2 of the Act of Congress of July 2, 1890 (15 U.S.C. § 2), commonly known as the Sherman Act.
  23. The aforesaid attempt to monopolize has consisted of doing the acts described in paragraph 11(a) through 11(f) inclusive which are hereby incorporated in this count with the same force and effect as if here set forth in full.
  [11. The aforesaid combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendants and co-conspirators to eliminate or limit competition in the sale and distribution of concrete products by concrete suppliers other than defendant concrete suppliers by:
  (a) Coercing purchases of concrete products . . . .
  Here follow, in subparagraphs (b) through (f), charges of various specific acts in furtherance of the conspiracy.]
  [Count 5]
  29. Beginning at the time of the initial stages of construction of a City Streets Sewerage Project, Plaquemine, Louisiana, on or about January, 1968, and continuing thereafter through the construction of said project, the exact dates being to the Grand Jurors unknown, in the Baton Rouge Division of the Eastern District of Louisiana and within the jurisdiction of this Court, defendants did willfully, unlawfully, and feloniously conspire and agree, each with the other, to obstruct, delay, and affect commerce, as that term is defined in Section 1951 of Title 18, United States Code, and the movement of cement and other building materials in such commerce, by attempting extortion (as defined in said section of United States Code), that is to say, said defendants attempted to obtain property in the value of the profits to be realized by defendant Anderson-Dunham, Inc., from the sale of concrete pipe to W. O. Bergeron as agent and representative of the W. O. Bergeron Construction Company, Inc., with his consent, induced by the wrongful use of fear, force and physical violence in that defendant Edward Grady Partin, acting in furtherance of the aforesaid conspiracy and agreement threatened to cause and did cause strikes, work stoppages and physical violence by members of the General Truckdrivers, Warehousemen and Helpers Local Union No. 5 at the site of the aforesaid project, unless and until such time as said W. O. Bergeron Construction Company agreed to purchase the total requirements of concrete pipe for said project from defendant Anderson-Dunham, Inc.

guilty of an attempt. American Tobacco Co. v. United States, 328 U.S. 781, 784, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). A form for recording their verdict was also furnished them, however, which characterized Counts 3 and 5 in the precise manner of Dunham's motion to strike which the court had overruled:

We the jury having been duly selected, empaneled, and sworn as trial jurors in the above captioned case hereby return the following verdict:

Ted F. Dunham, Jr.

| | |
|---|---|
| Count 1—Conspiracy to restrain trade in violation of Section 1 of the Sherman Act (15 U.S.C. Section 1) | Guilty ____ Not Guilty ____ |
| Count 2—Conspiracy to monopolize in violation of Section 2 of the Sherman Act (15 U.S.C. Section 2) | Guilty ____ Not Guilty ____ |
| Count 3—Conspiracy to attempt to monopolize in violation of Section 2 of the Sherman Act (15 U.S.C. Section 2) | Guilty ____ Not Guilty ____ |
| Count 4—Conspiracy to extort (18 U.S.C. 1951) | Guilty ____ Not Guilty ____ |
| Count 5—Conspiracy to attempt to extort (18 U.S.C. 1951) | Guilty ____ Not Guilty ____ |

———◆———

This form was prepared by the same counsel for Dunham who signed the motion to strike and tendered to the court at an unreported conference before the jury was instructed. Government counsel, according to affidavits in this record, remonstrated with the court, pointing out that the form adopted the erroneous construction of Count 3 which Dunham's counsel had pressed upon the court in his motion to strike and which the court had overruled, construing Count 3 to charge an attempt to monopolize. In apparent desperation, government counsel offered as a substitute "attempt to monopolize by co-conspirators." Counsel for Dunham, however, maintained his suggested form was correct. Unaccountably, the court adopted it as presented and sent it out with the jury.

Later in the day the jury advised the court, by hand note, that they had found Dunham guilty on Count 3. Asked by Dunham's counsel to instruct the jury that this "preliminary" verdict was not binding, the court did so. The jurors then submitted their verdict on the erroneous form, finding each defendant not guilty of Count 1, guilty of Counts 3 and 5, and reaching no verdict on Counts 2 and 4. No complaint was made on appeal of the form of verdict. As noted, however, after the appellate process had run its course, Dunham's counsel successfully advanced as constitutional error used by the jury of the verdict form which they had drafted, pressed upon the court over Government objection, and—in effect—forced the jury to use by the instruction about their original, handwritten verdict on Count 3.

In such a context, interesting questions of invited error [5] and deliberate

5. Even if the verdict form be viewed as part of the instructions to the jury, it might well be seen as falling within the rule of United States v. Manton, 107 F.2d 834 (2d Cir. 1939) and Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943).

by-pass of appellate remedies[6] are obviously raised. Since we are, however, satisfied beyond a reasonable doubt[7] that the error in wording of this form for recording the verdict did not contribute to Dunham's conviction, we need not attempt them. Referring to the form,[8] it is apparent that only four conceivable meanings can be ascribed to its Count 3 and Count 5 epitomes. Taking Count 3 as an example, they are:

A. Conspiracy to monopolize.

B. Conspiracy to fail to monopolize.

C. Attempt to monopolize.

D. Attempt to fail to monopolize.

Meanings B and D are nonsense; meaning A cannot have been intended since the jury was unable to agree on an answer to Count 2, which asked that precise question. Only meaning C is possible: Like reasoning applies to Count 5. We decline to construe the verdict as meaning the jury agreed on nothing or on nonsense " . . . when a perfectly rational explanation for the jury's verdict, completely consistent with the judge's instructions, stares us in the face." Schneble v. Florida, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972). As to their claims grounded in the verdict form, the appealing corporate defendants stand on no better ground than Dunham. Their other contentions, which we have carefully considered, are likewise meritless.

Insofar as the judgment below vacates the convictions and sentences of Ted F. Dunham, Jr., and grants him a new trial, it is reversed. As to the other appealing defendants, it is affirmed.

Affirmed in part, reversed in part.

---

6. It is the long-settled law of this circuit that such a deliberate by-pass can bar resort to habeas on § 2255, Larson v. United States, 275 F.2d 673 (5th Cir. 1960), and that the burden of showing absence of such a by-pass is on the petitioner. Nash v. United States, 342 F.2d 366 (5th Cir. 1965). See also Bonaparte v. Smith, 448 F.2d 385 (5th Cir. 1971) and Bowman v. Wainwright, 460 F.2d 1298 (5th Cir. 1972).

7. As required by Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

8. Which the jury may well have disregarded entirely, since its "preliminary" verdict of guilt on Count 3, at least, was returned on another paper entirely.