[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-13655

_____

D. C. Docket No. 02-00285-CR-WTM-4

UNITED STATES OF AMERICA,

                                                            Plaintiff-Appellee,

versus

JOHN RANDALL FUTCH,

                                                            Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(March 3, 2008)**

Before HULL and PRYOR, Circuit Judges, and MOORE,* District Judge.

HULL, Circuit Judge:

_____

   *Honorable K. Michael Moore, United States District Judge for the Southern District of
Florida, sitting by designation.

In a single order, the district court granted defendant John Randall Futch's ("Futch") 28 U.S.C. § 2255 motion as to his 240-month sentence and remanded for resentencing but denied his § 2255 motion as to his conviction claims. After a resentencing hearing, the district court imposed a new 215-month sentence for Futch's convictions for conspiracy to possess with intent to distribute, and to distribute, cocaine, in violation of 21 U.S.C. §§ 841 and 846. Futch timely appeals his new 215-month sentence.

In the same notice of appeal, Futch also seeks to appeal the district court's denial of his § 2255 motion as to his conviction claims. This case presents this issue of first impression in our circuit: when the district court grants a § 2255 motion as to the defendant's sentence and orders resentencing but denies it as to his conviction claims, does the appeal clock begin to run as to the conviction part of the § 2255 order at that time or only after the defendant has been resentenced on remand? We conclude that Futch's § 2255 proceeding was not final until he was resentenced on remand and that thus Futch's notice of appeal following resentencing timely appealed the denial of the conviction claims in his § 2255 motion.

However, Futch still needs a certificate of appealability ("COA") as to the § 2255 conviction claims, which we deny. While Futch does not need a COA as to

his sentence appeal, we affirm his 215-month sentence.[1]

## I. BACKGROUND

### A.    Futch's First Direct Appeal

We review the complicated procedural history of this case.  On November 8, 2002, Futch pled guilty to conspiracy to possess with intent to distribute, and to distribute, cocaine, in violation of 21 U.S.C. §§ 841 and 846.  Futch subsequently filed two motions to withdraw his guilty plea, which the district court denied.

Futch's presentence investigation report ("PSI") recommended a base offense level of 30, pursuant to U.S.S.G. § 2D1.1(c)(5), because his offense involved between 3.5 to 5 kilograms of cocaine.[2]  The PSI also recommended a two-level enhancement, pursuant to U.S.S.G. § 3B1.4, because Futch "used [an infant] by placing it on top of the cocaine hydrochloride in an effort to hide the drugs, thereby attempting to avoid detection of the offense"; and a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1.  With a criminal history category of V and an adjusted offense level of 34, Futch's advisory guidelines range was 235 to 293 months' imprisonment.

---

[1]Futch filed his § 2255 petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), and the provisions of that act govern this appeal.

[2]The charge, to which Futch pled guilty, also alleged a drug quantity of 3.5 to 5 kilograms of cocaine.

Futch objected to the § 3B1.4 and § 3C1.1 enhancements. The district court overruled Futch's objections, adopted the PSI's advisory guidelines calculations, and sentenced Futch to 240 months' imprisonment.

In his first direct appeal, Futch appealed only the denial of his motion to withdraw his guilty plea. This Court affirmed Futch's conviction. See United States v. Futch, No. 03-11123, slip op. at 5 (11th Cir. Mar. 1, 2004).

**B.    Section 2255 Motion**

On April 7, 2005, Futch filed a counseled 28 U.S.C. § 2255 motion to vacate his conviction and sentence. Futch's § 2255 motion raised numerous conviction claims, including that the government's seizure of almost $19,000, which was returned to Futch with interest approximately three years later, prevented Futch from hiring an attorney and thus interfered with his Sixth Amendment right to counsel of his choice. Futch's § 2255 motion also asserted that one of his prior state convictions had been vacated, which changed his criminal history category and warranted resentencing.[3]

On June 21, 2005, a magistrate judge recommended that Futch's § 2255 motion be granted as to his sentence due to the change in his criminal history

---

[3]The Superior Court of Chatham County, Georgia, had granted Futch's state habeas motion as to his conviction for second degree criminal damage to property on the grounds that his guilty plea was not knowing, intelligent, and voluntary. This changed Futch's criminal history category from V to IV.

category but denied as to all other claims. The government conceded that Futch's sentence should be vacated. On August 10, 2005, the district court adopted the magistrate judge's report, granted Futch's § 2255 motion for resentencing, ordered a new sentencing hearing, and denied all other § 2255 relief. The district court entered judgment on August 11, 2005. Futch did not appeal the judgment at this time.

## C. Resentencing

On June 23, 2006, the district court held a resentencing hearing. Futch's adjusted offense level remained 34, but his criminal history category changed from V to IV, resulting in an advisory guidelines range of 210 to 262 months' imprisonment. The district court sentenced Futch to 215 months' imprisonment. On June 26, 2006, the district court entered an amended judgment reflecting Futch's new sentence.

On June 27, 2006, Futch filed a notice of appeal, through counsel, stating that he was appealing "the final order entered in this matter . . . and all interim orders." This is the appeal presently before this Court.

## D. Futch's COA Request

In the district court, Futch also filed a motion for a COA, seeking to appeal

many of the claims he had raised in his § 2255 motion.[4] Futch's motion noted that he was requesting a COA on these claims because he intended to include them in his direct appeal of his new sentence.

On February 28, 2007, the district court denied Futch's motion for a COA. On March 19, 2007, Futch filed a notice of appeal from the district court's denial of a COA. On April 26, 2007, this Court dismissed that appeal for lack of jurisdiction because the district court's order denying Futch a COA was not an appealable order. See Futch v. United States, No. 07-11243, slip op. at 1 (11th Cir. Apr. 26, 2007). The Court also noted that Futch's proper course was to seek a COA from this Court directly. Id.

## II. APPELLATE JURISDICTION

The parties do not dispute that on June 27, 2006, Futch timely filed a direct appeal of his new 215-month sentence entered on June 26, 2006, and that we have jurisdiction over Futch's sentence appeal. Rather, the jurisdictional question in this case is whether Futch's June 27, 2006 notice of appeal was also a timely appeal of the district court's August 10, 2005 order denying his § 2255 motion as to his conviction claims. Stated another way, was Futch required to immediately appeal

---

[4]For example, Futch's motion expressly requested a COA on this issue: whether the government interfered with his Sixth Amendment right to counsel of choice in its unwarranted seizure of his bank funds.

6

the partial denial of his § 2255 motion in August 2005, or, because the district court granted his § 2255 motion in part and ordered resentencing, could he wait until he was resentenced?

To answer that question we must determine when Futch's § 2255 proceedings were final for purposes of appeal.  See 28 U.S.C. § 2255(d).[5]  In determining when Futch's § 2255 proceedings were final, we are guided by (1) the Supreme Court's decision in Andrews v. United States, 373 U.S. 334, 83 S. Ct. 1236 (1963), concluding a Federal Rule of Criminal Procedure 35 order granting resentencing was properly treated as a § 2255 order and was not appealable until after resentencing; (2) our decision in United States v. Dunham Concrete Products, Inc., 501 F.2d 80 (5th Cir. 1974),[6] discussing Andrews but concluding a § 2255 order granting a new trial was immediately appealable; and (3) the Fourth Circuit's decision in United States v. Hadden, 475 F.3d 652 (4th Cir. 2007), applying Andrews to a § 2255 order granting resentencing and concluding the § 2255 order was not appealable until after resentencing.  We discuss each decision in turn.

In Andrews, two prisoners filed Rule 35 motions to vacate their sentences,

[5]Section 2255(d) states: "An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus."  28 U.S.C. § 2255(d).

[6]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

7

alleging that they were denied their allocution rights. See Fed. R. Crim. P. 35 (1963); Andrews, 373 U.S. at 336-37, 83 S. Ct. at 1238.[7] The district court granted the Rule 35 motions and ordered that the prisoners be resentenced. Andrews, 373 U.S. at 336, 83 S. Ct. at 1238. The government filed a notice of appeal, and the resentencings were stayed. Id. The Second Circuit treated the Rule 35 motions as § 2255 civil actions instead of motions filed in the prisoners' original criminal cases. The Second Circuit concluded it had jurisdiction over the appeals and reversed on the grounds that the prisoner's allocution claims were no basis for collateral relief. Id. at 336-38, 83 S. Ct. at 1238-39.

While the Supreme Court in Andrews noted that the Second Circuit was correct in treating the Rule 35 motions as § 2255 civil motions, it concluded that the Second Circuit did not have appellate jurisdiction because the district court's orders "were interlocutory, not final." Id. at 338-39, 83 S. Ct. at 1239. The prisoners had asked only that their sentences be vacated so they could be resentenced with their rights of allocution. Id. The Supreme Court noted that § 2255 authorizes a district court to "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. at 339, 83

---

[7]At that time, Rule 35 provided that the court "may correct an illegal sentence at any time." Fed. R. Crim. P. 35 (1963).

8

S. Ct. at 1239 (quoting 28 U.S.C. § 2255 (now 28 U.S.C. § 2255(b))). Therefore, the Supreme Court concluded that "[w]here, as here, what was appropriately asked and appropriately granted was the resentencing of the petitioners, it is obvious that there could be no final disposition of the § 2255 proceedings until the petitioners were resentenced." Id. at 340, 83 S. Ct. at 1239-40.

In reaching this conclusion, the Supreme Court in Andrews noted the "long-established rule against piecemeal appeals in federal cases" and "the overriding policy considerations upon which that rule is founded." Id. at 340, 83 S. Ct. at 1240. "[T]he rule as to finality 'requires that the judgment to be appealable should be final not only as to all the parties, but as to the whole subject-matter and as to all the causes of action involved.'" Id. (quoting Collins v. Miller, 252 U.S. 364, 370, 40 S. Ct. 347, 349 (1920)). In Andrews, the Supreme Court also stated that "[u]ntil the petitioners are resentenced, it is impossible to know whether the Government will be able to show any colorable claim of prejudicial error." Id. Thus, "until the court acts, none of the parties to this controversy will have had a final adjudication of his claims by the trial court in these § 2255 proceedings." Id. (emphasis added). Thus the import of Andrews is that the § 2255 proceeding was not complete until the resentencing. Although Andrews did not involve § 2255 challenges to a conviction and held only that a district court's § 2255 order granting resentencing

9

is not appealable until after resentencing, <u>Andrews</u>'s reasoning–that the § 2255 proceeding itself is not complete and final until after the ordered resentencing–certainly guides our analysis and suggests the August 10, 2005 order here was not final until after resentencing.

In <u>Dunham</u>, however, this Court distinguished <u>Andrews</u> and concluded that a § 2255 order granting a defendant a new trial ended the § 2255 proceedings and was a final appealable order at that time. The <u>Dunham</u> Court pointed out that "[t]he pertinent language of § 2255" states that "[a]n appeal may be taken . . . as from a final judgment on [] application for a writ of habeas corpus." <u>Dunham</u>, 501 F.2d at 81 (quoting 28 U.S.C. § 2255 (now 28 U.S.C. § 2255(d)) (omission in original)). The Court then explained that "§ 2255 proceedings are, like habeas matters, civil actions mainly standing on their own bottoms and . . . when an order is entered in the § 2255 proceeding which satisfies established notions of finality, either party prejudiced may appeal as in other civil actions." <u>Id.</u> The <u>Dunham</u> Court concluded that the § 2255 proceedings had ended with the new trial order requiring the government, if it wished to continue to prosecute Dunham, to return to the district court for a new trial. <u>Id.</u> at 81-82.

The Court in <u>Dunham</u> distinguished <u>Andrews</u> as involving only a § 2255 resentencing order, stating:

> Nor do we view <u>Andrews</u> as contra: there the United States' attempt to appeal from a resentencing order was dismissed since, as Mr. Justice Stewart noted, " . . . there could be no final disposition of <u>the § 2255 proceedings</u> until the petitioners were resentenced." The Court notes also that, since until the petitioners are resentenced it cannot be known whether the Government is hurt, the <u>Andrews</u> situation demonstrates the basis of the rule against piecemeal appeals.

<u>Dunham</u>, 501 F.2d at 81 (quoting <u>Andrews</u>, 373 U.S. at 340, 83 S. Ct. at 1240 (emphasis added; omission in original)). The <u>Dunham</u> Court in essence determined that § 2255 new-trial orders satisfied finality concerns, whereas § 2255 resentencing orders did not.

The Fourth Circuit's application of <u>Andrews</u> in <u>United States v. Hadden</u>, 475 F.3d 652 (4th Cir. 2007), is also instructive because it, too, distinguishes a § 2255 order granting resentencing from a § 2255 order granting retrial. The defendant filed a § 2255 motion challenging his drug and 18 U.S.C. § 924(c) firearm convictions. <u>Hadden</u>, 475 F.3d at 657. The district court initially entered an October 2002 order denying the drug claims but advising the government that the § 2255 motion would be granted as to the firearm conviction and sentence unless the government planned to retry the defendant on the firearm charge. <u>Id.</u> The government advised the district court that it would not retry the defendant. <u>Id.</u> Thus, in November 2002, the district court dismissed the firearm charge and entered an Amended Judgment that effectively vacated part of the defendant's

original 228-month sentence and entered a new 168-month sentence.  Id.

In Hadden, the Fourth Circuit confronted a question of whether the Amended Judgment with a new 168-month sentence was the final order in the defendant's § 2255 proceeding or only part of his criminal case.  Hadden, 475 F.3d at 657-60.  As to the initial October 2002 order, the Fourth Circuit reasoned that "a district court's order that contemplates the court's correction of the prisoner's sentence at some time in the future–like an order that contemplates the district court's conducting a future 'resentencing'–does not complete the § 2255 proceeding and is therefore not immediately appealable."  Id. at 662 (citing Andrews, 373 U.S. at 340, 83 S. Ct. at 1236) (original alterations omitted).  However, as to the November 2002 Amended Judgment with the new 168-month sentence, "a district court's order that either enters the result of a resentencing or corrects the prisoner's sentence completes the § 2255 proceeding and is therefore immediately appealable."  Id. at 663 (citing Andrews).  The Fourth Circuit determined that the Amended Judgment in Hadden bore "traits of both a § 2255 proceeding and a criminal action" and was thus "a hybrid order that is both part of the petitioner's § 2255 proceeding and part of his criminal case."  Id. at 664.  "To the extent the order formally completes the prisoner's § 2255 proceeding, it is part of that proceeding"; to the extent the order vacates the original sentence and enters

12

a new criminal sentence, it is part of the criminal case.  Id.

Hadden also differentiated between a § 2255 order granting a new trial and a § 2255 order granting resentencing.  The Fourth Circuit explained the efficiency concerns that resulted in different treatment of those § 2255 orders.  "'[I]t would waste litigants' and the district courts' resources to conduct the new trial . . . only for the appellate court to determine, after the trial was completed, that it was not necessary in the first place.'"  Id. at 662 n.10 (quoting United States v. Stitt, 459 F.3d 483, 487 (4th Cir. 2006) (Williams, J. concurring)).  The Fourth Circuit concluded that "[t]hese efficiency considerations are not present when the district court conducts a run-of-the-mill resentencing."  Id.

Applying the reasoning from Andrews, Dunham, and Hadden, we conclude that Futch's § 2255 proceedings were not completed and final until the district court resentenced him on June 26, 2006.  The district court's June 26, 2006 final judgment on resentencing had "traits" of both a criminal action and a § 2255 proceeding.  See id. at 664.  When the district court entered Futch's new sentence after resentencing, it not only entered a final sentence in Futch's criminal case but also completed the § 2255 proceedings by providing the relief awarded in that § 2255 case.  In so concluding, we follow the Supreme Court's statement in Andrews that "[w]here, as here, what was appropriately asked and appropriately granted was

13

the resentencing of the petitioners, it is obvious that there could be no final disposition of the § 2255 proceedings until the petitioners were resentenced." Andrews, 373 U.S. at 340, 83 S. Ct. at 1239-40.

Further, Futch's June 27, 2006 notice of appeal after the resentencing–which specified that he was appealing the district court's June 26, 2006 judgment "and all interim orders"–timely appealed both the new sentence and the district court's August 10, 2005 order in the § 2255 proceedings denying his § 2255 conviction claims. This avoids piecemeal appeals because the June 26, 2006 judgment concludes the whole subject matter and all claims as to both the conviction and sentence in Futch's § 2255 proceedings.

Although Futch's notice of appeal was thus timely filed as to both his new sentence and the earlier denial of his § 2255 motion as to his conviction, there is still the issue of whether Futch needs a COA and whether a COA should be granted.

### III. COA

To the extent Futch appeals the denial of his § 2255 motion as to his conviction, those claims are part of his § 2255 proceedings. Thus, Futch needs a COA from this Court in order for us to have jurisdiction to address them. See 28

14

U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1); <u>Hadden</u>, 475 F.3d at 664.[8]

Although Futch did not file a separate COA motion in this Court, we routinely construe a defendant's notice of appeal as a motion for a COA. <u>See</u> Fed. R. App. P. 22(b) ("A request addressed to the court of appeals may be considered by a circuit judge or judges, as the court prescribes. If no express request for a certificate is filed, the notice of appeal constitutes a request addressed to the judges of the court of appeals."); <u>Pagan v. United States</u>, 353 F.3d 1343, 1346 (11th Cir. 2003) ("We may construe the notice of appeal as containing a request for [a COA]."). Because we conclude, as discussed earlier, that the June 27, 2006 notice of appeal sought to appeal the district court's August 10, 2005 § 2255 order, we construe the notice of appeal as a request for a COA.

In order to obtain a COA as to his conviction claims, Futch must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>Pagan</u>, 353 F.3d at 1346. In determining whether to grant a COA, we "look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason."

---

[8]Petitioners like Futch also need to ask the district court before asking us for a COA as to their § 2255 claims. <u>See</u> <u>Edwards v. United States</u>, 114 F.3d 1083, 1084 (11th Cir. 1997) ("District courts must consider and rule upon the propriety of issuing the COA first, that is, before a request for a COA will be received or acted on by this court or a judge of this court."). As noted earlier, Futch already filed a motion for a COA as to his § 2255 conviction claims, which the district court denied.

15

Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003). Futch has not made the requisite showing.

Futch's Sixth Amendment claim that the government's seizure of his assets denied him his counsel of choice fails that requirement for several reasons. Futch has made no showing that he would have withdrawn his guilty plea if he had had different counsel. Further, when probable cause exists for a seizure, the legitimacy of the assets is contested and the defendant has no right to use them to retain counsel. See United States v. Bissell, 866 F.2d 1343, 1351 (11th Cir. 1989) ("[T]he right to counsel of choice belongs solely to criminal defendants possessing legitimate, uncontested assets."). Thus, Futch has not made a substantial showing of the denial of a constitutional right as to this claim.

Futch's brief also contends his Fifth Amendment due process rights were violated because he had no post-restraint pretrial hearing to contest the seizure. Futch failed to raise that claim in his § 2255 motion before the district court. His argument is therefore waived. See Johnson v. United States, 340 F.3d 1219, 1228 n.8 (11th Cir. 2003).[9]

---

[9]An examination of Futch's § 2255 motion filed in the district court and supporting memorandum of law reveals at best the general assertion that "[t]he conviction was obtained and/or sentence imposed in violation of the Fifth Amendment to the Constitution of the United States, specifically the right to due process of law and equal protection of the laws." Futch makes several arguments regarding how his Fifth Amendment rights were violated. His counseled § 2255 motion and memorandum never mention the denial of a post-restraint pretrial hearing. After his § 2255 motion was denied in part as to his conviction claims, Futch's request

16

Thus, we deny Futch a COA as to all claims in his § 2255 proceedings.[10]

## IV.  SENTENCE APPEAL

On June 27, 2006, Futch also timely appealed his new 215-month sentence. Because that part of his appeal relates to his criminal case and is a direct appeal matter, Futch did not need to obtain a COA, and we have jurisdiction to address this issue.  See Hadden, 475 F.3d at 664.

Futch appeals the two-level sentence enhancement for his use of a minor to conceal a drug transaction, pursuant to U.S.S.G. § 3B1.4.  Futch's brief on appeal argues that the minor's mere presence and proximity to the cocaine are legally insufficient to warrant application of the § 3B1.4 enhancement and that, at any rate, the government failed to prove by a preponderance of the evidence that Futch used the minor to avoid detection.[11]

Section 3B1.4 states, "If the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of,

---

for a COA, which was denied, did reference his due process claim that he was not provided with a post-seizure pretrial hearing.  This does not change the fact that Futch did not make the claim in his § 2255 motion.  In any event, and alternatively, we deny Futch a COA on this claim.

[10]Futch's brief does not argue any other claims from his § 2255 petition and thus he has abandoned them.  See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

[11]We review a district court's interpretation of the sentencing guidelines de novo and its factual findings for clear error.  United States v. Taber, 497 F.3d 1177, 1179 (11th Cir. 2007), cert. denied, 128 S. Ct. 949 (2008).

17

or apprehension for, the offense, increase by 2 levels." U.S.S.G. § 3B1.4. The plain language of § 3B1.4 "categorically imposes an enhanced penalty upon defendants who 'used or attempted to use' a person under the age of eighteen to commit (or avoid detection of, or apprehension for) an offense." United States v. McClain, 252 F.3d 1279, 1286 (11th Cir. 2001) (emphasis added).

This Court recently clarified the "definition and scope of the terms 'use' or 'attempted to use' as they are employed in § 3B1.4." See United States v. Taber, 497 F.3d 1177, 1181 (11th Cir. 2007). In Taber, we concluded that "a § 3B1.4 adjustment is warranted only where the defendant takes some affirmative step to involve a minor in the commission of the criminal activity." Id. We also have stated that the "unambiguous legislative design of section 3B1.4 is to protect minors as a class from being solicited, procured, recruited, counseled, encouraged, trained, directed, commanded, intimidated, or otherwise used to commit crime." McClain, 252 F.3d at 1286 (quotation marks omitted) (emphasis added).

In this case, the PSI reported that "Futch used Dixon's child by placing it on top of the cocaine hydrochloride in an effort to hide the drugs, thereby attempting to avoid detection of the offense." The government argued that Futch, sitting in the front passenger seat of a car, had placed the baby on top of the cocaine next to him to conceal the cocaine. However, according to the Addendum to the PSI,

18

Futch objected to the PSI's statement that he used the baby to conceal the drugs and instead Futch claimed the baby was in the back seat in a car seat.

As to the location of the baby, the district court heard the testimony of Vicki Buck, the confidential informant who bought cocaine from Futch in the deal during which he had the infant. At sentencing, Buck testified that: (1) Futch was in the front passenger seat of a Cadillac with the infant, an eight- or nine-month-old baby; and (2) Futch had placed the baby down next to him.[12] Buck went into her office, picked up a tote bag, and walked it back out to Futch. According to Buck, Futch had the tote bag in his lap and "reached down kind of by the baby and dropped a package into the bag." Buck stated she did not see the cocaine before Futch handed it to her because the infant had been sitting on top of the cocaine. On cross-examination, Buck stated that Futch "reached his hand under the baby's butt" to get the cocaine. Buck clarified, "Beside, underneath. I mean, the baby was kind of snugged up next to his butt. This child was, you know, eight, nine months old, maybe. I mean, it wasn't like she was sitting up totally on her own. She was right up against his body."

Given Vicki Buck's testimony at sentencing, the district court did not err in overruling Futch's objections and adopting the factual statements in the PSI.

---

[12]Buck testified at the earlier sentencing, and the parties and the district court referenced her testimony at the resentencing.

19

Buck's testimony adequately supported the PSI's factual statement that "Futch used [the baby] by placing it on top of the cocaine hydrochloride in an effort to hide the drugs, thereby attempting to avoid detection of the offense." In addition, the use of the minor in this case goes beyond mere presence of a minor. Rather, during the drug deal, Futch took the affirmative step of <u>physically placing</u> the baby on top of the cocaine in the front seat of the car and next to him, effectively using the baby as a human shield to conceal his cocaine from anyone who might look in the vehicle. When Buck returned with the bag, Futch then had to reach underneath the baby to retrieve the cocaine. We cannot say the district court clearly erred in its factfinding that Futch was using the baby to physically conceal the cocaine or committed legal error in its conclusion that the § 3B1.4 enhancement applied to the facts here.

## V.  CONCLUSION

For the foregoing reasons, we deny a COA as to Futch's § 2255 conviction claims and affirm as to his new 215-month sentence.

**SENTENCE AFFIRMED; COA DENIED.**