[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13106

_____

D.C. Docket No. 8:09-cr-00572-JSM-TGW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARK ANTHONY MYRIE,
a.k.a. Buju Banton,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

Before WILSON, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Mark Myrie appeals an order granting in part and denying in part his motion for a new trial, taking issue with the portion of the order denying a new trial on two offenses of which he was found guilty and for which he was sentenced to a term of imprisonment. We must dismiss the appeal, however, because we are without jurisdiction to dispose of the issues on the merits.

I.

Myrie met Alexander Johnson, a paid confidential informant for the Drug Enforcement Administration (DEA) and the Sarasota Police Department (SPD), on a trans-Atlantic flight on July 26, 2009. Johnson did not disclose that he was a confidential informant. Upon learning that Johnson was a Colombian national, Myrie began discussing his experience in the illegal drug trade and told Johnson to be careful with a mutual acquaintance from the drug trade who, according to Myrie, had become a "snitch." Myrie also discussed future plans to bring cocaine from Venezuela to Europe via Saint Martin on a sailboat. The two exchanged contact information and agreed to meet the following day. Johnson reported the conversation to the DEA, which gave Johnson permission to record future conversations with Myrie.

Myrie and Johnson met the day after the flight. They continued to discuss dealing in illegal drugs, with Myrie asking Johnson for names of suppliers. Myrie also explained that he limited his dealings to financing drug transactions. The two

2

met again on August 1 and discussed transacting in drugs further. They also kept in touch by telephone and met again on December 8. Myrie brought Ian Thomas to that meeting and told Johnson that Thomas knew prospective buyers for Johnson's cocaine. Johnson proposed a drug transaction. The group then drove to a warehouse where undercover SPD detectives were waiting with a large amount of cocaine. Myrie taste-tested some of the cocaine. Johnson and Thomas discussed specifics for multiple sales of thirty kilograms of cocaine with Myrie present. Thomas told Johnson that Myrie would no longer come to the meetings.

Johnson and Thomas met the next day, and Thomas brought another associate, James Jackson Mack, with him. Myrie was not present. Thomas told Johnson that Mack worked for the buyers. Johnson, Thomas, and Mack met again the following day. They drove to the warehouse, where undercover SPD detectives were waiting. More officers arrived and arrested Thomas and Mack. They searched Mack's car and discovered a loaded handgun. Myrie was arrested in his home.

Myrie was indicted and charged[1] with (1) conspiracy to possess five kilograms or more of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); (2) attempt to possess five kilograms or more of cocaine with intent to distribute, in violation of §§ 841(a)(1) and 846 (Count 2); (3)

---

[1] Myrie's first trial actually ended in a mistrial after a hung jury. This opinion discusses the trial that ultimately resulted in Myrie's conviction.

3

possession of a firearm in furtherance of, and carrying a firearm during the course of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 3); and (4) aiding and abetting the use of a telephone to commit a drug trafficking crime, in violation of 21 U.S.C. § 843(b) (Count 4). The jury instructions on Count 3 included a *Pinkerton*[2] instruction:

> During a conspiracy, if a conspirator commits a crime to advance the conspiracy toward its goals, then in some cases a coconspirator may be guilty of the crime even though the coconspirator did not participate directly in the crime.
>
> If you find the defendant guilty of the crime of conspiracy as charged in Count One, you may also find the defendant guilty of the crime charged in Count Three, even though the defendant did not personally participate in the crime. To do so, you must find beyond a reasonable doubt:
>
> (1) during the conspiracy a conspirator committed the additional crime charged to further the conspiracy's purpose;
>
> (2) the defendant was a knowing and willful member of the conspiracy when the crime was committed; and
>
> (3) it was reasonably foreseeable that a coconspirator would commit the crime as a consequence of the conspiracy.

The other counts did not include a *Pinkerton* instruction.

A jury found Myrie guilty on Counts 1, 3, and 4 and not guilty on Count 2.

Myrie moved for a judgment of acquittal on all counts, which the district court

---

[2] *Pinkerton v. United States*, 328 U.S. 640, 66 S. Ct. 1180 (1946) (extending criminal liability for substantive crimes committed in furtherance of a conspiracy to co-conspirators who have not directly participated in the substantive crimes).

granted as to Count 3 only. Myrie appealed the denial of the motion as to Counts 1 and 4, and the government appealed the grant as to Count 3. We reversed the grant of Myrie's motion as to Count 3 and affirmed the denial as to the remaining Counts. *See United States v. Myrie*, 479 F. App'x 898 (11th Cir. 2012) (per curiam). On remand, the district court denied Myrie's motion for a new trial and his motion for reconsideration.

Myrie filed a second motion for a new trial based on potential juror misconduct. The second motion stemmed from a published newspaper article in which Terri Wright, the jury foreperson, described writing notes in her car at the conclusion of each day of trial regarding the evidence presented at trial that day and conducting research when she returned home. During an evidentiary hearing on the second new trial motion, Christopher Sweeney, the article's author, testified that Wright had, in fact, told him that in an interview. Sweeney also testified that Wright had indicated that she had researched the *Pinkerton* rule.

Additionally, Wright ambiguously stated in response to a voir dire question about prior jury service, "I have served in previous juries, and it was a civil case and there was a verdict." Sweeney testified that Wright had told him that she had served on more than one previous jury, including in criminal trials, and that jury service was a passion of hers. Sweeney also testified that he interviewed Myrie's

5

trial attorney, who had claimed that he would have stricken Wright from the panel if he had known about Wright's extensive jury service experience.

Wright's testimony at the first evidentiary hearing was more ambiguous. Wright claimed to have conducted research only after the trial concluded. That research, according to Wright, was on Myrie and his music[3] as well as *Pinkerton*. She specifically denied conducting research during the trial, but she did admit to keeping notes. Wright also denied discussing research with other jurors. Finally, when asked "whether it occur[red] to [Wright] that [she] should [have] explain[ed] to the judge during [voir dire] that [she] had served on more than one jury trial," Wright responded, "No, because that wasn't a question."

Two other jurors testified that they did not know whether another juror had conducted research during the trial. Another juror, however, testified that, during deliberations, she had overheard one of the female jurors telling other jurors that she had researched *Pinkerton*. That juror described the woman discussing *Pinkerton* as a white woman, and she testified that none of the black, female jurors had participated in the *Pinkerton* discussion. Wright, however, is black. The district court also issued a subpoena to Wright, ordering her to submit to the district court the hard drive from the computer Wright had used during Myrie's trial.

---

[3] Myrie is a professional reggae musician.

6

At a second evidentiary hearing, the remaining jurors testified that they did not know anything about another juror conducting outside research. In addition, Wright brought a hard drive from a home computer to court and testified that that hard drive was the only one she had used during the trial. The court entered an order permitting Myrie's expert to examine the hard drive for activity from the first day of trial through two weeks after the trial concluded. The search was further limited to specific terms related to the trial, including "Pinkerton" and "Myrie."

Wright testified at a third (and final) evidentiary hearing that she conducted her research long after the trial concluded, though she could not specify when she had conducted the research. After examining the hard drive, the expert testified that, for a period of approximately nine months before the trial, approximately four months after the trial, and during the trial itself, the computer containing the hard drive had not been used at all.

The district court found that Wright's voir dire statement was ambiguous. It also found that Wright had conducted outside research on *Pinkerton* liability during the trial and that she had discussed the research with at least two other jurors. The court also found that the hard drive Wright had turned over was not the hard drive that she had used to conduct the research. The court granted Myrie's motion as to Count 3 and denied it as to the other Counts. The basis for the district

7

court's order was its determination that the *Pinkerton* doctrine supported a conviction for Count 3 but did not apply to the other Counts.

Myrie appealed the district court's denial of the motion as to Counts 1 and 4. The government did not appeal the grant of the motion as to Count 3.

## II.

Before we can address the merits of the appeal, we must resolve a jurisdictional issue briefed by the parties in response to a question from this court. In *United States v. Martinez*, we noted that an order granting a motion for a new trial is not within our appellate jurisdiction. 763 F.2d 1297, 1308 (11th Cir. 1985). Myrie presents an extensive argument that the order is ripe for review, distinguishing these facts from those in *Martinez* by noting that the motion here came after sentencing, pursuant to Fed. R. Crim. P. 33(b)(1), while the motion in *Martinez* was granted before sentencing. *See United States v. Tovar-Rico*, 61 F.3d 1529, 1536 (11th Cir. 1995) ("In a criminal case, a judgment of conviction and sentence is necessary to create a final order which is appealable under 28 U.S.C. § 1291."). Where a motion is filed before the district court enters judgment and sentences the defendant, courts of appeals normally consider the motion along with the defendant's direct appeal of his conviction and sentence. *See United States v. Loney*, 959 F.2d 1332, 1343 (5th Cir. 1992). Here, says Myrie, we have a judgment and sentence, satisfying the finality requirements we laid out in *Tovar-*

8

*Rico. See United States v. Isaacson*, 752 F.3d 1291, 1308–09 (11th Cir. 2014) (reviewing a denial of a post-sentence motion for new trial based on newly discovered evidence), *petition for cert. filed*, (U.S. Nov. 14, 2014).

Myrie argues further that the fact that the motion was granted in part does not deprive us of jurisdiction. He cites *United States v. Futch* for the proposition that the government's ability to recommence prosecution on Count 3 does not detract from the finality of the district court's order. *See* 518 F.3d 887, 891–94 (11th Cir. 2008). The inquiry, according to Myrie, is into the finality of the post-judgment order, not the potential for another prosecution. *See id.*; *see also United States v. Dunham Concrete Prods., Inc.*, 501 F.2d 80, 81–82 (5th Cir. 1974) (holding that an order granting a defendant a new trial pursuant to the defendant's 28 U.S.C. § 2255 motion was final and appealable).[4]

Nevertheless, we do not have jurisdiction to reach the merits of the district court's decision to deny Myrie's motion for a new trial on Counts 1 and 4. We are bound by two cases—*United States v. Wilson*, 440 F.2d 1103 (5th Cir. 1971), and *In re United States*, 898 F.2d 1485 (11th Cir. 1990) (per curiam)—to conclude the pending charge against Myrie prevents us from hearing his appeal at this point in the proceedings. In *Wilson*, this Court held that no final judgment had been

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

9

entered and appellate jurisdiction did not exist to hear a case where the defendant had been convicted of six counts of tax evasion but sentenced on only three of those counts. 440 F.2d at 1104–05. In *In re United States*, this Court concluded that "when a defendant is sentenced on fewer than all of the counts on which the defendant is convicted, the order is not final for purposes of appeal." 898 F.2d at 1487. In a footnote, this Court further stated:

> If we were writing on a clean slate, we might come to a different conclusion. An appealable order is one that finally and irreparably affects the rights of parties, and, in our view, each count on which a defendant is convicted should constitute a separate case, which is brought to a conclusion by sentencing. We are not at liberty, however, to so hold.

*Id.* at 1487 n.4.

Myrie's and the Government's arguments for jurisdiction boil down to an assertion that Myrie's convictions and sentences on Counts 1 and 4 constitute separate cases that have been brought to a conclusion by sentencing. If we were writing on a clean slate, we, like the panel in *In re United States*, would agree with that view. This Court, however, has concluded such a determination is foreclosed by *Wilson*, and the prior panel rule requires us to accept that interpretation. *See United States v. Whatley*, 719 F.3d 1206, 1216 (11th Cir. 2013) ("We are bound to follow a prior panel or en banc holding, except where that holding has been overruled or undermined to the point of abrogation by a subsequent en banc or Supreme Court decision." (internal quotation marks omitted)); *Tucker v. Phyfer*,

10

819 F.2d 1030, 1035 n.7 (11th Cir. 1987) (noting that, had a prior panel considered two Supreme Court decisions, the later panel "would be bound by its interpretation and application of those decisions").

If we were writing on a clean slate, we would conclude the district court's order granting in part and denying in part Myrie's motion for a new trial finally and irreparably affected Myrie's rights as to Counts 1 and 4 and his convictions on those counts constituted separate cases which were brought to a conclusion by sentencing. Like the panel in *In re United States*, we are not at liberty, however, to so hold. Accordingly, we are without jurisdiction to hear this appeal.

**DISMISSED.**